JACKSON, *ex dem.* HERKIMER and Wife, *against* BILLINGER.

*H.* by his will, dated *April* 5, 1771, devised as follows: "my will and pleasure is,that my son *John* shall have the *farm* which I now live upon, &c two of the best negroes, all my wearing apparel, three geldings, &c. But if my said son may happen to die unmarried, without lawful issue, then it is my will and pleasure, thatthe said estate shall descend to my next heir of the name of *H.* and that he may not sell, exchange, or dispose of any part of said estate,without the consent. approbation, and concurrence of my executors."The testator died in *August*, 1775, leaving five sons and eight daughters. *John*, the devisee died *April* 20, 1817, unmarried, and without issue, leaving one sister, and nephews and nieces living : *Held*, that *John*, the devisee, took an estate tail by implication; and that the devise over, depending on an *indefinite failure of issue*, was not good as an executory devise: and that the estate tail, being converted into an estate in fee simple, by the statute, (1 *N. R. L.* 52.) it descended, on the death of *John*, to his heirs at law, according to the statute regulating descents.

EJECTMENT for land, in *German Flats*, in the County of *Herkimer*. *Hanjost Herkimer*, the elder, being seized of the premises in question, made his will, on the 5th *April*, 1771. After declaring that his wife should remain "sole and absolute mistress of whatever estate he might die *possessed*, both real and personal, during her natural life," he devised as follows: "my will and pleasure is, that my son *John* shall have the farm which I now live upon, together

with one hundred acres adjoining thereto, in the new patent;" (together with some articles of personal property specified, viz. wearing apparel, horses, negroes, &c.) "but if my said son may happen to die unmarried or without lawful issue, then it is my will and pleasure that the said estate shall descend to my next heir of the name of *Herkimer ;* .and that he may not sell, exchange, or dispose of any part of said estate, without the consent, approbation, or concurrence, of my executors." After some other directions, the testator appointed his sons *Nicholas, Henry,* and *Jost,* executors. The testator died seized of the premises in *August,* 1775. The ejectment was brought for the farm on which the testator lived, and the one hundred acres adjoining, devised to his son *John. Catharine,* the wife, died soon after the testator. His son *John* died *April* 20, 1817, without issue, never having been married. The testator, at his death, left five sons and eight daughters. *Nicholas,* the eldest son, died in *August,* 1777, without issue. *Henry,* the second son, died in *August,* 1779, leaving *Honjost,* one of the lessors of the plaintiff, his son and heir at law, born the 1st *October,* 1751. *Jost,* the third son, was attainted under the act of *October,* 1779, and removed to *Canada,* where he died in 1787, leaving seven children, four of whom died previous to *April,* 1817, one without issue, and three leaving issue. *George* died in 1786, leaving seven children who are still living. *Elizabeth Barbara,* the eldest daughter, married *David Schuyler,* and died in 1800, leaving *Catharine,* one of the lessors of the plaintiff, and four other children, one of whom died previous to *April,* 1817, leaving lawful issue who are still living. *Lana, Delia Catharine, Anna,* and *Nancy,* other daughters of the testator, all died before *April,* 1817, leaving issue. *Elizabeth,* the sixth daughter, married *Hendrick Frey,* and is now living, being the only child of the testator that survived *John,* the devisee above named.

The cause was submitted to the opinion of the Court, on a case containing the above facts; and it was agreed that if the Court should be of opinion, that the plaintiff was entitled to recover the whole of the premises in question, then the defendant should give a *cognovit actionem* for the same; but if the Court should be of opinion that the plaintiff was entitled

to recover only an undivided share, then the defendant should give a *cognovit actionem* for such share as the Court shall adjudge under the demises laid in the declaration.

*Talcot*, for the plaintiff. No particular estate is *expressly* limited, by any appropriate description, to the testator's son *John*; nor is any estate *expressly* given to his issue; and if it were not for the words, "if he shall die without lawful issue," he would take only a life estate. Admitting that it was the testator's intention to provide for the issue of *John*, yet it is not necessary, in order to carry that intention into effect, to maintain that he took a *vested estate tail*. That intention may be effectuated by holding, 1. that *John* took a fee determinable upon the contingency of his dying without issue living, at the time of his death; or, 2. that he had an estate for life, to become an estate tail, upon the contingency of his leaving issue at his death.

1. We shall contend that *John* did not take a vested estate tail, because the remainder over is not limited upon an indefinite failure of issue, but upon the event of his dying without issue, at the time of his death. If there had been an express devise in tail and remainder over, it would have made no difference in *John's* estate, to have added, afterwards, that in case he die without issue living at the time of his death, the estate should go to the remainder man, for it is no more than the law implies, in every case of an estate tail with a remainder. But where the estate devised is, *by implication*, to be changed from what it would otherwise be, into an *estate tail*, from the effect of the words, "dying without issue," or any similar expression, and a subsequent limitation over, then it becomes necessary to determine whether the limitation over is upon an *indefinite*, or a *definite* failure of issue. In the first case, if the devisee is in being and ascertained, it will be a vested estate tail; in the second case, it will be otherwise. There are many cases in the books which illustrate this distinction. (*Pell* v. *Brown*, Cro. *Jac.* 590. *Porter* v. *Bradley*, 3 *Term Rep.* 143. *Roe* v. *Jeffrey*, 7 *Term Rep.* 589. *Doe* v. *Ellis*, 9 *East*, 382. *Tenny* v. *Agar*, 12 *East*, 262; per *Bayley*, J. *Doe* v. *Webber*, 1 *Barnewall and Ald. Rep.* 713. *Fosdick* v.

*Cornell,* 1 *Johns. Rep.* 440. *Executors of Moffatt* v. *Strong,* 10 *Johns. Rep.* 12. *Jackson* v. *Staats,* 11 *Johns. Rep.* 337. *Anderson* v. *Jackson, in error,* 16 *Johns. Rep.* 382.)

So, where it is attempted to change an estate for life into an estate tail, or a fee, as in *Plunket* v. *Holmes,* (1 *Lev.* 11. *T. Raym.* 28.) where one devised to *T.* his eldest son. for life, and if *T.* should die without issue living at his death, then to *L.* another of the testator's sons, in fee; it was resolved that *T.* was tenant for life only. "Because," says Mr. *Fearne,* (on *Cont. Rem.* &c. 341.) " the limitation over was not upon a dying without issue generally, but was confined to a dying without issue then living." So, in the case of a devise to a son for life, and after his death, if he died without issue *then living,* to a daughter, the son takes only an estate for life. (3 *Com. Dig.* 431, *Devise (N,* 6.) *Vent.* 231.) In *Lethieullier* v. *Tracy,* (3 *Atk.* 784.) the question was, whether Mrs *T.* by the words in Sir *W. D's* will, " in case my daughter shall depart this life without issue of her body living at her decease," took an estate tail by implication; and Lord *Hardwicke* held, that she did not. " It is certainly true," says he, " that there are several cases in law, where the words, if he die without issue, have been held to vest an estate tail by implication. But there is no case comes up to this."

These cases show, that where the estate in fee or for life, is first limited by appropriate words, that the words " die without issue," will not change it into an estate tail, unless they refer to an indefinite failure of issue.

The same rule holds where there are no words in the devise, specifically describing or limiting, in the first instance, any particular estate to the devisee, as is the case now before the Court. In *Richardson* v. *Noyes,* (2 *Mass. Rep.* 56.) where the words were, " if either of my said sons should die without children, the survivor, or survivors, to hold the share of each, or any of them, dying without children;" *Sedgwick,* J. who delivered the opinion of the Court, says, " If, by the devise to the survivor, or survivors, the testator meant, that he or they should take whenever there should be an indefinite failure of issue, however distant that period might be, then he intended a fee tail; and if, by this expres-

UTICA,
October, 1820.

JACKSON
v.
BILLINGER.

sion, he contemplated events which were to take place in the life of the devisees, then he did not intend a fee tail." So. where there is no devise of any estate but by implication. (*Daintry* v. *Daintry*, 6 *Term Rep* 307.)

We shall contend, that the words of the testator, in the present case, show, that he meant a *definite* failure of *issue*. In *Brigge* v. *Bensley*, (1 *Bro. C. C.* 187.) Lord *Thurlow* says, " that the general sense of dying without issue, is at the time of the death; this is the grammatical construction, and is the sense, in general, of those who use the words." The same thing has been repeated by a succession of *English* judges. In *Pinbury* v. *Elkin*, (1 *P. Wms.* 565.) Lord Ch. J. *Parker* says, the " words die without issue, are relative to the death of the party, that being the natural meaning of the words." It is strange, therefore, that they should have been construed in a different manner in a devise, where the *intent* of the testator is said to be the polar star to guide us to the true construction. The *English* doctrine, upholding a different construction, seems well to deserve the severe reprobation of Chief Justice *Wilmot*, in *Keilly* v. *Fowler*. (cited 16 *Johns. Rep.* 387.) It cannot be, that the Courts have adopted this doctrine, on the ground that it was the intent to provide for the issue of the devisor indefinitely, and for the remainderman, whenever that issue should fail; and that to effectuate *that intent*, the words were to be understood in a different sense from that in which the testator understood them; for there are numerous cases in the *English* books to show, that if there are *other circumstances* in the will, denoting that the testator meant a definite failure of issue, that it shall then be so held, as well in cases of the limitation of *real*, as of personal property, and the Courts are eager to lay hold of such circumstances. It seems absurd to say, " we admit," (as Lord *Thurlow* did,) " that the natural sense of the words, the grammatical construction of them, and the meaning of those who use them, is a definite failure of issue, and yet we will not believe that to be the meaning, unless you prove it by other parts of the will." As *Brackenridge*, J. in *Holmes* v. *Holmes*, (5 *Binney Rep.* 264.) observed, " doubtless, the *English* judges will tell you, that words may be construed otherwise

than they mean; that though you may hear or see without rule, you cannot understand without rule, and you must submit to the rule of construction, let you think what you will of the intention." But whatever may be the doctrine in *England*, the Courts of this country, and of this state especially, have ventured to free the law from such absurdities. (1 *Johns. Rep.* 439. 3 *Johns. Rep.* 292. 11 *Johns. Rep.* 337. 16 *Johns. Rep.* 382.) The cases decided here, establish the true rule of construction, that the *legal* meaning of the words, " die without issue," is the same as the natural meaning of them; and this they have done upon the sound principles of common sense; for, as Lord *Ellenborough* observed, " there is a rule of common sense as strong as any rule, that the words of the will are to be construed according to the natural meaning, unless some obvious incongruity would result from so construing them." It is true, that in the cases decided in this Court, there were peculiar circumstances which might be called in aid of the natural meaning of the words. But, in *Anderson v. Jackson*, the Court of Errors, according to the opinion delivered by *Yates*, senator, did not rely upon these circumstances. They put the case on the broad principle, that dying without issue, meant dying without issue living at the death of the devisee. In *Hoge v. Hoge*, (1 *Serg. & Rawle's Rep.* 144.) Ch. J. *Tilghman* says, " the most simple and natural meaning of dying without leaving issue, is leaving issue at the time of the devisee's death." Lord *Hardwicke* (3 *Atk.* 797.) says, that where the intention of the testator to create an estate tail is not plain, judges will lay hold of any circumstances, rather than put it in the power of a person to bar subsequent limitations. If, then, we are compelled to seek for other circumstances in the will, in aid of the natural meaning, before the Court can say, that the natural meaning is that of the testator, we contend, that those circumstances exist in the present case. (1.) The devise over is of the *whole estate* given to *John*, to the next heir of the testator of the name of *Herkimer*; and this devise carries the *personal*, as well as the real estate. In *Richardson v. Noyes*, (2 *Mass. Rep.* 62, 63.) the Court were of opinion, that this circumstance denoted that the testator did not

contemplate an indefinite failure of issue; because, that event might not take place in a century, when neither the negroès, or the tools of husbandry, &c. would be in existence. It is true, Chancellor *Kent*, in *Anderson* v. *Jackson*, apprehended, that this decision, according to the *English* law, was a mistaken one, in not following the rule in *Forth* v. *Chapman*, making a distinction, as to the construction of the will, between the devise of the real, and the bequest of the personal property; though he had before said, in *Moffat* v. *Strong*, (10 *Johns. Rep.* 16.) that it would be hazardous to decide a case on that distinction. He seems, however, in *Anderson* v. *Jackson*, to suppose, that this distinction which had been exploded by Lord *Kenyon*, in *Porter* v. *Bradley*, (3 *Term Rep.* 143.) had been restored by him in *Daintry* v. *Daintry*, (6 *Term Rep.* 307.) But the certificate in that case, sent to the master of the rolls, can only be supported upon the ground, that no such distinction exists. In *Roe* v. *Jeffrey* (7 *Term Rep.* 595.) Lord *Kenyon* said. that he was not prepared to unsay what he had said in *Porter* v. *Bradley*. Mr. *Fearne* (*Essay on Cont. Rem.* 483. 448. 6 ed.) remarks, that the nature of the chattels given over, on the dying without issue, (viz. cows and horses,) was not suitable to the supposition of an indefinite failure of issue. (1 *Munf. Rep.* 549. 2 *Munf. Rep.* 479.)

(2.) Another circumstance : the words of the devise are, " if my said son may happen to die *unmarried*, or without *lawful issue*." This is equivalent to saying, if he shall have died, without having been married, or having been married, without having had issue by his wife. The testator must have contemplated the determination of the question as to his son's dying unmarried, and dying without lawful issue, to be made at one and the same time. As his dying unmarried could not refer to an indefinite time, but must be determined at the moment of his death, so neither could his dying without lawful issue, refer to an indefinite time. (*Rethowe* v. *Chappel*, cited *Cro. Jac.* 461.)

(3.) A third circumstance is : In the devise over to the next heir of the testator, after failure of the issue of *John*, the testator adds : " and he may not sell, exchange or dis-

pose of any part of the said estate, without the consent, approbation, or concurrence of my executors." Now, the testator cannot be supposed to have understood the technical rule of law, by which the executor of an executor may be called the executor of the testator; but must have referred to the executors named in his will. This is manifest from a subsequent clause in his will, by which he puts his wife, in case she becomes unsound of mind, under "the care of his said executors, *hereinafter named.*" The testator must clearly have contemplated a limitation over to his next heir, upon a failure of issue during a life or lives in being, that is, his executors named; "otherwise," says *Fearne,* in his remarks on the case of *Keily* v. *Fowler, (Essay on Cont. Rem.* 485.) "we make him repose a trust in his executors, inconsistent with a probability of their living to perform it."

(4.) A fourth circumstance is, in the devise over; that "the said estate shall descend to the next heir of the testator, of the name of *Herkimer.*" The word *estate* implies *interest* as well as locality. It means, here, not only the same *lands* which were devised to *John,* but the same *interest* which *John* had taken in them. The estate of the next heir could not be an *estate tail,* because if it were so, it would have been useless to add the clause, confining him to the approbation of executors, in the *sale* or *exchange* of the estate, for an estate tail cannot be sold or exchanged. (*Best, arguendo, Doe* v. *Witton,* 2 *Bos. & Pull.* 326.)

Thus we have shown, that a vested estate tail cannot arise by implication, on a definite failure of issue; that the testator did, in this case, contemplate a definite failure of issue; and, therefore, *John* did not, in this case, take a vested estate tail, with remainder over to the next heir of the devisor.

2. Then, we contend, that *John* took an estate *in fee* determinable upon the contingency of his dying without issue living at the time of his death, with a good executory devise over, upon that contingency, to the next heir of the testator. It will be said, that *John* must take an estate of *inheritance,* by implication, in order to provide for the issue. If so, then if it has been shown that it cannot be an estate tail, it follows, that it must be an estate in fee. Words which show

an intent that the devisee should have a greater estate than for life, and which do not limit an estate tail, make a fee. (3 *Comyn Dig.* 422. 424. 2 *Mass. Rep.* 56.)  Again; the *estate* to the next heir is a fee.  In *Randall* v. *Tuchin*, (6 *Taunt.* 460.) *Heath*, J. says, " where the word *estate* is *operative*, it passes a *fee*; and the test to try whether it is operative, is to strike it out of the will."  And applying this test to that case, he said, the " devise would be nonsense."  Another reason for holding *John's* estate to be a fee, is, that the land is given by the same words as the *personal* property. (*Johnson* v. *Johnson*, 1 *Munf. Rep.* 549.)

3. But if the estate devised to *John*, was to become an estate tail, it was only to become such in his issue, upon the contingency of his *dying, leaving issue then living*.  And as he died without issue then living, the estate has been nothing but an estate for life, from the beginning.  In *Chadock* v. *Cowley*, (*Cro. Jac.* 695.) it was urged, that the devise should create an estate tail upon contingency, but the Court said, that the words, that the survivor shall be heir to the other, if he die without issue; they seem to be an estate tail.  But if the devise had been, if he die without issue in the life of the other, or before such an age, it should be a contingent devise in tail, if it should happen, and not otherwise; but being that the survivor shall be heir, &c. it is an estate tail immediately."  The case of *Fountain* v. *Gooch*, (2 *Bac. Abr.* 59, 60.) may be supposed to contradict this, but, in that case, there was an estate tail expressly given in the first instance.  The case of *Leithieullier* v. *Tracy*, (3 *Atk.* 784.) before cited, shows, that where the failure of issue is definite, it is an estate tail upon a contingency; and that under a devise like the present, upon a definite failure of issue, the issue may take by purchase.  In this view of the case, the limitation over would be good, inasmuch, as it would only be the common case of a limitation over upon a contingency with a double aspect, and not a limitation of a contingent estate, to take effect after the expiration of a precedent contingent estate.  The event of *John's* death, with or without issue, determined which estate was to take effect; whether it was to be taken by the issue of *John*, or the next heir of the testator.

If *John* did take a vested estate tail, the act abolishing estates tail has not destroyed the limitation over; and if it cannot take effect as a *remainder*, it shall take effect as an *executory devise*. In *Haven's Lessee* v. *Schultz*, (3 *Yeates' Rep.* 324.) *Shippen*, Ch. J. says, " it is no new thing to construe limitations *according to the event*, in order to support the intention of the testator." In *Holmes* v. *Holmes*, (5 *Binney*, 260.) *Yeates*, J. observes, " it is generally true, that a devise shall stand as at the time of making the will, and shall not be construed by any after act, collateral contingency, or subsequent circumstance : but it is equally true that the rule is not universal." In *Pay's* case, (*Cro. Eliz.* 878.) there was a devise from *Michaelmas* term following, with a remainder over, and the testator died before *Michaelmas* term ; and as it could not take effect as a remainder, it was held good as an executory devise. In *Hopkins* v. *Hopkins*, (*Cases temp. Talbot* 44., 50. 51.) Lord *Talbot* cited *Pay's* case, and said, that "if a remainder, in its first creation, does, by any subsequent accident, become an executory devise, why should it not be good here, on the authority of that case?" In *Plunket*, v. *Holmes*, (1 *Lev.* 11.) the course of argument taken by the Court, admits, that if the descent of the fee, in that case, had not merged the life estate, the remainder would have been an executory devise. So, in *Fortescue* v. *Abbott*, (2 *Lev.* 202.) the reversion descended to the eldest son, and so destroyed the contingent remainders to the other two sons ; and it was held good by way of executory devise.

The next heir of the name of *Herkimer* is a sufficient *descriptio personæ*. The testator meant him that would be next heir of his name, as the law then stood. The time of the death of *John*, the devisee of the intermediate estate, was the time at which it was to be determined who was next heir, within the meaning of the devise. *Elizabeth*, the eldest daughter, having lost her name by marriage, could not take the estate under this devise, even if the issue of the sons had been extinct. (*Bon* v. *Smith*, *Cro. Eliz.* 532.) Besides, in restricting the power of the next heir to sell, &c. the testator uses the masculine pronoun, which could not refer to *Elizabeth*, nor any of his daughters.

*Cady*, contra. 1. *John*, the devisee, took an estate tail, by implication, which, by the statute abolishing entails, was converted into an estate in fee, and on his death, descended to his sister. A devise to a person generally, without any words of limitation, which, of itself, would create only an estate for life, may be enlarged by subsequent words, or by implication, into an estate tail. (*Newton* v. *Bernardine, Moore*, 127.) The testator devised to his wife for life, and after to his son, and if he died without issue, having no son, another should have it; it was held, that the son took an estate in tail male. (*Robinson* v. *Miller*, 1 *Roll. Abr.* 837. *Cruise Dig.* tit. 38. ch. 12. s. 30. s. 40.)

2. The devise over, in case *John* died unmarried, and without issue, is void, as being too remote; and there are no words showing, that the testator intended a dying without issue at the death of *John*, but a general failure of issue. The counsel for the plaintiff censures the doctrine of the *English* law on this subject; but it is the business of this Court to expound the law as it was when this devise was made; not to make new law. It is unnecessary to cite all the cases on this point. They will all be found in the case of *Anderson* v. *Jackson, ex dem. Eden*, (16 *Johns. Rep.* 382.) and we venture to say, that not a case is to be found in the *English* books, where these words have been used in a will, that they have not been construed to mean an indefinite failure of issue. Let the case of *Anderson* v. *Jackson* be understood as it may, it does not apply to the present case. The will here was made in 1771, before the statute *de donis* was abolished. In the case of *Jackson, ex dem. Eden*, v. *Anderson*, the will was made in 1798. The statute *de donis* was in force until the 1st of *May*, 1788, (2 *Greenl. Ed. Laws*, 116.) from which time, with all the *English* statutes, it ceased, by the act of the 27th of *February*, 1788, to have any operation here. That statute lies at the foundation of estates in tail; and if the devise in this case was of an estate tail, by the act of the 23d of *February*, 1786, (1 *N. R. L.* 52. sess. 9. ch. 12.) it was turned into an estate in fee, thereby saving the trouble of suffering a common recovery. The case of *Plunket* v. *Holmes*, (1 *Lev.* 11.) shows, that the devise over, in this case, is void, as being on an event too remote. According to the argument of the plaintiff's

counsel, the estate over was a contingent estate for life. The word estate, is used to denote the particular property devised, not the quantity of *interest.* The words " said estate," referred to the farm on which the testator lived, by way of description merely as to its locality. It is manifest from the language of the whole will, that the testator knew what was meant by an estate tail.

UTICA,
October, 1820.

JACKSON
v.
BILLINGER.

3. The estate over, must take effect as a contingent re-mainder, and not as an executory devise. The devise over is to the next heir of the testator of the name of *Herkimer.* It is not to him and his heirs; there are no words of limita-tion used, showing, that the testator intended to give the devisee more than an estate for life, unless that intent is to be inferred from the word " descend," or the word " es-tate." The word " descend," as here used, can have no greater effect than the word devise, or the words *he shall have;* because a person claiming as devisee, cannot take by descent. It is true, that the word " estate" does, some-times, pass a fee, but it must clearly appear, that it was used by the testator to denote all his interest in the land devised. (*Cruise's Dig. tit.* 38. *ch.* 13. *s.* 35. *s.* 36.) But the words " said estate," as has been already observed, have reference merely to the farm and 100 acres of land, as de-scriptive merely of the locality of the land. (*Rogers* v. *Briggs, And. Rep.* 210. *Cruise Dig. tit.* 38. *ch.* 13. *s.* 37.) The testator understood how to devise a fee, when it was his intention to do so. In the last clause of the will, he uses apt words for that purpose. He says, " all the rest, residue, and remainder, of my estate, both real and person-al, after my wife's decease, 1 give, devise, and bequeath unto all my children, and *to their heirs and assigns for ever."* If the devise to his next heir of the name of *Herkimer,* did not pass a fee, then the remainder in fee is embraced in the residuary clause. The testator did not mean to die intestate as to any part of his estate. The whole was devi-sed. No person can claim any part of it, as his heir at law. No title can be made to it, but under the will, or as heir to some one of the devisees. Then was not the devise over a contingent remainder? " Whenever a future interest in land is so devised, as to fall within the rules laid down for

the limitation of contingent remainders, such devise shall be construed to be a contingent remainder, and not an executory devise." (*Cruise Dig. tit.* 38, *ch.* 17. *s.* 11.) Where the devise over, is after an estate tail, it is not an executory devise, but a contingent remainder. (*Cruise Dig. tit.* 38. *ch.* 18. *s.* 8. 17. 29. 30. 31.) A remainder is contingent, when it is limited to take effect on an event which may never happen, or on a condition which may never be performed. (*Cruise Dig. tit.* 16. *ch.* 1. *s.* 8, 9. *s.* 46. *Doe* v. *Holmes,* 2 *Bl. Rep.* 777.)

4. As the next heir of the name of *Herkimer* died in the life-time of *John*, the contingent remainder did not take effect. But this depends on the question, who was the person described as the next heir of the testator, by the name of *Herkimer?* The will speaks, as soon as the testator dies. Now, at the time of his death, the next heir of the name was *Nicholas*, the eldest son and heir at law, who was then living; but as he died in 1777, before *John*, the contingency never took effect, and so the devise over failed. Circumstances have been referred to, to show that the estate over was the same estate as that given to *John*, or an estate in fee. But the clause as to the concurrence of *executors*, shows that the testator had in view, his eldest son, *Nicholas*. (*Shep. Touchst.* 418. 436.)

If *John* took an estate for life only, then, by the last clause, the residue of the estate was devised to all the children, share and share alike. If the devise over, in the residuary clause, created a contingent remainder, then *Elizabeth*, the sixth daughter, who married *Henry Frey*, and was the only child of the testator living, at the death of *John*, takes the whole estate. If the residuary clause creates a vested remainder, then the lessor, *Honjost*, is entitled to one *twelfth* in his own right, and to one *forty-eighth* part, in right of his wife, who was the daughter of *Elizabeth*, the eldest daughter of the testator, and Mrs. *Frey* is entitled to *two twelfth* parts.

SPENCER, Ch. J. delivered the opinion of the Court. The plaintiff claims to recover on the ground that he is the next heir of the testator, of the name of *Herkimer*, had the

rules of descent remained unaltered; and that the devise over, on the contingency of *John's* dying unmarried and without issue, operates as an executory devise. If he fails in establishing this construction, then he claims that both the lessors are entitled to portions of the estate as heirs of *John*, and this latter position is conceded.

On the part of the defendant, it is contended, that the devise to *John* created an estate tail in him, and that the devise over cannot, by the rules of law, take effect as an executory devise.

We must construe this will according to the state of things, and as it would have been construed, at the instant of the testator's death. (*Doug.* 477. *n.* 1. 1 *Ves.* 153. 3 *Burr.* 1570.) In my opinion, *John*, the testator's son, took an estate tail by implication. The devise over depended on an indefinite failure of issue, and therefore, the contingency was too remote to avail as a limitation, in the nature of an executory devise. That an estate tail may be created by mere implication, without any express words of devise, is settled in a variety of cases. The authorities to support this position, are collected by *Cruise*, (title *Devise*, ch. 12. from *s.* 30 to 40.) and there is not a case to the contrary. If the implication be a necessary one, as I think it is in this case, it will defeat the heir at law of his estate in fee. *John* then took an estate in tail, unless the devise over can be supported as a good executory devise. It is an indisputable rule, that an executory devise must vest within the compass of a life or lives in being, and twenty-one years and a fraction after, otherwise it is too remote, and tends to create a perpetuity. Now, there is nothing in the will to show, that the testator meant that *John's* dying without issue, should be issue living at the time of his death; the contingency, therefore, in the view of the testator, depended on an indefinite failure of issue, and, consequently, was too remote an event to sustain the devise over, as an executory devise. *Fosdick & Cornell*, (1 *Johns. Rep.* 440.) and the several other cases decided in this Court, and the case of *Jackson, ex dem. Eden,* v. *Anderson,* (16 *Johns. Rep.* 382.) in the Court of Errors, were all decided on the intention of the testator apparent in the will, that the devise

UTICA,
October, 1820.

JACKSON
v.
BILLINGER.

over should take effect upon the death of the devisee, he dying without issue living, at the time of his death. In all these cases, the limitation over was to the survivor of persons *in esse*, when the will was made. In the present case, there is nothing to show that the testator intended the estate should vest in his next heir of the name of *Herkimer*, upon the death of *John*, if he died without issue living at that time ; indeed, the testator had no idea who would be his next heir of the name of *Herkimer*, at the death of his son *John*.

This being the true construction of the will, the statute abolishing entails, (1 *R. L.* 52.) converted the estate in tail, into a fee simple absolute, and thus *John* died seised in fee of the premises, and the estate descends according to the regulations of the statute of descents, and the lessors are entitled to their shares.

Judgment for the plaintiff accordingly.