## DAVID DUMOND *vs.* S. L. STRINGHAM.

By a will executed previous to the adoption of the revised statutes, the testator devised certain premises to his son, in these words: "I give and bequeath to my son H. D. one hundred acres of land, off the west end of my land on lot No. 22 in the town of F., to include the improvements made by my sons D. and W. D." He also gave to H. D, the use of a certain meadow until J. should arrive at the age of 21 years, a legacy of $100, and all the testator's stock, of different kinds of cattle, which had not already been

Dumond *v.* Stringham.

disposed of. Another part of the will contained the following clauses: "I also allow my son H. D. to give to my son J. D. common English schooling, at the expense of him, H. D." "My will also is, that if any of my heirs above mentioned should die without lawful issue, that the part willed to them should be equally divided between the surviving heirs." *Held* that the language used in devising the land to H. D. gave to him an estate in the premises for his life only; but that the subsequent clause, by which the testator "allows" the devisee to give to J. D. common English schooling at his own expense, imposed a personal charge upon the devisee, in respect or on account of all the provisions made by the will in favor of H. D., including the land; the effect of which was to enlarge the estate from one for the life of the devisee, to that of a fee.

*Held also*, that by the clause directing that if any of his heirs should die without lawful issue, the part willed to them should be equally divided between the surviving heirs, H. D. took a *conditional fee*, depending upon his leaving lawful issue at the time of his death; in which case such issue would take, and if he should die without issue the condition would fail, and the limitation over to the surviving heirs of the testator would be effectual by way of an *executory devise*.

*Held further*, that the limitation over was not void because of the remoteness of the contingency; it being apparent, from the whole scope and tenor of the will, that the testator intended when one of his children should die without lawful issue, that his or her share should vest immediately in the survivors.

*Lott* v. *Wykoff*, (2 *Comst.* 355,) distinguished from the present case.

THIS was an action of ejectment, brought by the plaintiff to recover an undivided one sixth part of certain premises hereafter mentioned. The action was tried at the circuit court held in the county of Seneca, in March, 1856, before Mr. Justice T. R. STRONG, without a jury, a jury being waived by the parties. Upon the trial the following facts were agreed upon by the counsel for the respective parties, viz: That William Dumond, late of the town of Fayette, in the county of Seneca, and state of New York, was in his lifetime seised in fee simple of about one hundred and sixty-two and one half acres of land, being the south part of lot No. 22 in the township of Romulus, (now Fayette,) including the premises in question, of one hundred acres, lying on the west end thereof. That on the 1st day of March, in the year 1813, the said William Dumond duly made and published his

last will and testament, containing the following provisions: "I give and bequeath unto my beloved wife Rachel Dumond six hundred dollars, to be paid in manner following, viz: two hundred and fifty dollars as soon as the first payment is made for land sold to Henry Chunkquiter, and three hundred and fifty dollars in four equal payments, as the payments from the said Henry Chunkquiter become due and are paid. I also give and bequeath to my said widow, my bed and bedding on which myself and my wife usually lay; also her two choices of the milch cows in my flock; also six head of old sheep, which she may choose; also I leave to my beloved wife the youngest one horse, saddle and bridle; all which I give to my wife in lieu of her dower. Item: I give and bequeath unto my son David Dumond nine hundred dollars, to be paid in manner following, viz: four hundred dollars as soon as the first payment is made for the land on which I live, bought by Henry Chunkquiter, and the remaining five hundred dollars to be paid in equal installments, as the payments due on the above mentioned sale become due and are paid. Item: I also give and bequeath unto my son William V. Dumond seven hundred dollars; four hundred dollars to be paid as mentioned before for David Dumond, and the remaining three hundred dollars to be paid as the before mentioned legacies are. Item: I give and bequeath unto my son Herman Dumond one hundred acres of land, off the west end of my land on lot No. 22 in the town of Fayette, to include the improvements made by my sons David and William Dumond. I also leave to my said son Herman Dumond the use of the meadow on the east end of said lot, until my son Joseph comes to the age of twenty-one years; also I leave to my said son Herman one hundred dollars, to be paid in hand. I also give to my son Herman all my stock of different kinds of cattle, whatsoever, which have not already been disposed of. Item: I give and bequeath unto my son Joseph Dumond the remainder of my lands on the south side of said lot No. 22, to include the meadow at the east end of said lot. Item: I give and be-

Dumond *v.* Stringham.

queath unto my daughter Temperance Duells five hundred
dollars, to be paid into the hand of my son Herman Dumond;
one hundred and fifty dollars at the time the first payments
are to be made to the other heirs, and the remaining three
hundred and fifty dollars to be paid as the payments of the
first above mentioned heirs receive their shares, which my said
son Herman Dumond shall lay out in land to the best ad-
vantage he can, for her and her heirs. Item: I give and
bequeath unto my daughter Caty five hundred dollars, to be
paid and applied in the same manner and for the uses for my
said daughter Caty, as mentioned in the above bequest. Item:
I give and bequeath unto my daughter Elizabeth five hundred
dollars, to be paid at the times before mentioned, for the
benefit of her and her heirs, as described above, to the other
female heirs. I also give to my said daughter Elizabeth one
hundred dollars, out of the last payment to be made on the
land sold to Henry Chunkquiter. I also give and bequeath
unto my granddaughter Rachel Rosekrans one hundred dol-
lars, of the last payment above mentioned. I also allow my
son Herman Dumond to give to my son Joseph Dumond com-
mon English schooling, at the expense of him, my son Her-
man Dumond. I also allow all my farming utensils, loom,
&c. to be sold at public vendue, and the money arising from
said sale to be equally divided between my sons David, Her-
man, William and Joseph Dumond. I also allow all my
grain in the sheaf, bushel, ground or otherwise; all my meats,
potatoes and other vegetables, to be for the support of my
widow and family. I also allow my widow to have the use
of all my dresser, &c. kitchen furniture during her natural
life, and at her death be equally divided between my three
daughters mentioned in this will. My will also is, that if
any of my heirs above mentioned should die without lawful
issue, that the part willed to them should be equally divided
between the surviving heirs. I also allow that if my son
Herman should die during my wife's widowhood, that she
should have the profits of the land willed to my son Herman,

during her widowhood, and no longer. I also order all my lawful debts and funeral expenses to be paid out of the several legacies, in proportion to the sums allowed to each heir. I also allow and order my executors to convey to Henry Chunkquiter the lands sold to him, as will appear in the article of sale: and I do hereby appoint Hugh McAllister and Alexander Rorison of Fayette town, and county of Seneca, my executors of this my last will and testament, hereby revoking all former wills by me made."

On the 5th day of March, 1813, the testator duly made a codicil to his said will, the contents of which are not necessary to be stated for the purpose of presenting the questions arising in the case. The will and codicil were duly executed and witnessed. By the will and codicil the testator disposed of all his property, real and personal. On the 13th of March, 1813, the testator departed this life, at Fayette aforesaid, leaving the said will and codicil unrevoked and in full force, which was duly proved and recorded in the surrogate's office in Seneca county, on the 23d March, 1813. The said William Dumond left him surviving the following named children and grandchildren and heirs at law, to wit: David Dumond, the plaintiff in this suit; Herman Dumond, who died on the 1st December, 1852, without issue and without ever having married; William V. Dumond, who died in the autumn of 1851, leaving children him surviving; Joseph Dumond, who died after his father's death, under age without issue, never having married, and was about ten years old at his father's death; Temperance Duells, wife of Samuel Duells, who died since the death of her father, leaving one child who is still living; her husband, Mr. Duells, died before the death of said Temperance; Elizabeth, who was married to Nelson Rosevilt, who died after the death of her father about thirty years ago, leaving her husband and two children, who are still living; Catherine, who is the wife of George Stuck, both of whom are living; and Rachel D. Rosekrans, a granddaughter of William Dumond, who was the daughter of Jane Dumond Rosekrans, (a

daughter of the said William Dumond,) who died before the death of her father, the said Rachel being still living. Rachel Dumond, the widow of the testator, died about 29 years ago. After the death of William Dumond, Herman entered into the possession of the premises in question, and continued in such possession until he conveyed the same to the defendant, as hereinafter mentioned. On the 10th day of January, 1839, the said Herman Dumond sold and conveyed to the defendant, his heirs and assigns, by a warranty deed, for the consideration of $6000 expressed therein, the premises in question; and the defendant thereupon entered into the possession and occupation thereof, and has ever since continued and still continues in such possession and occupation thereof, claiming them as owner in fee.

The justice before whom the action was tried ordered judgment in favor of the plaintiff, that he recover one undivided sixth part of the premises, in fee, with $25 for rents and profits, and judgment was entered accordingly, from which the defendant appealed.

The following opinion was delivered by the justice before whom the cause was tried:

T. R. Strong, J. "According to the law in force at the time of the death of William Dumond, in 1813, by which the construction and effect of the devise must be determined, it is clear that the words, 'I give and bequeath unto my son Herman Dumond 100 acres of land, off the west end of my land on lot No. 22, in the town of Fayette, to include the improvements made by my sons David and William Dumond,' unless there is something further in the will manifesting an intention to pass a larger estate, gave to the devisee an estate only for life. Some words of inheritance, or evincing an intention to give a fee, were, prior to the revised statutes of 1830, essential to create such an estate. (*Mesick* v. *New*, 3 *Selden*, 163. *Harvey* v. *Olmsted*, 1 *Comst.* 483.)

It is claimed on the part of the defendant, that the clause

in the will, ' I also allow my son Herman Dumond to give to my son Joseph Dumond common English schooling, at the expense of him, my son Herman Dumond,' imposed a charge upon the devisee in respect to the land devised, and thus enlarged the estate to a fee. The rule is well settled that a devisee, without express words of limitation or perpetuity, will pass a fee, if the devisee is personally charged· with a debt or duty in respect to the subject of the devise; for the reason that if the devisee should take an estate for life only, he might be a loser by the termination of his estate before he could realize from it benefits equal to the charge, and hence it will be regarded that the devisor intended a fee ; but I do not think the rule applicable to the present case. In addition to the devise of the 100 acres of land, the use of a meadow until Joseph Dumond should come to the age of 21 years, and considerable money and personal property were given to Herman. The clause as to the schooling is in a different part of the will from the devise and bequests to Herman; and assuming the clause to impose a charge, there is nothing in the language of the will indicating that the furnishing the schooling was intended to be made a charge in respect to the subject of the devise. (*Mesick* v. *New, above cited.* 2 *Preston on Estates*, 243, 4.)

Another clause in the will is also relied on in behalf of the defendant, as manifesting an intention to devise a fee to Herman. The will makes provision for several children of the testator besides Herman, and after the several devises and bequests, proceeds : ' My will also is, that if any of my heirs above mentioned should die without lawful issue, that the part willed to them should be equally divided between the surviving heirs.' It is insisted that this clause implies, that in case of issue they would take, and thus proves a design to give a fee. I think this a sound position. The case of *Jackson* v. *Billinger*, (18 *John.* 368,) is directly in point in support of it. In that case, there was a devise to a son of the testator, of a farm, without words of limitation or perpetu-

ity, with a clause that 'if my said son happen to die unmarried and without lawful issue,' then the estate to go to another person, it was adjudged that the son took an estate tail by implication, which was converted into a fee by the statute. (*See also* 4 *Kent's Com.* 7th ed. 441, *marginal paging, and cases there cited.*)

The next succeeding clause in the will, 'I also allow that if my son Herman should die during my wife's widowhood, that she should have the profits of the lands willed to my son Herman, during her widowhood, and no longer,' is not inconsistent with the intention to devise a fee to Herman; it merely gives an interest to the wife, to which the devise in fee was to be subject. It was manifestly the intention of the testator that the fee should not be an absolute fee simple; this is clear from the limitation of the estate to the surviving heirs, on the death of any of the heirs without lawful issue. Whether that intention can be effectuated, depends upon the construction to be given to the language of the limitation. If the words 'without lawful issue' be held to mean an indefinite failure of issue, the limitation is too remote and void: an estate tail was created, and Herman, by force of the statute abolishing estates tail, took a fee simple; but if they are held to mean without issue living at the decease of the heir dying, the fee devised was a determinable or qualified one, and not a fee tail, and the limitation is good as an executory devise. The estate was then determinable upon the death of the devisee without issue, and upon the happening of that event the estate passed to the survivors. The word 'heirs,' in the limitation over, was obviously used in the sense of the term 'children,' as the only 'heirs above mentioned' in the will were the children and a grandchild of the testator; and the clause is to be read as if the words 'children and grandchild' were in the place of the word 'heirs.' The limitation was then in effect, if any of the children or the grandchild should die without lawful issue, the part willed to them should be equally divided between the surviving children and the grand-

child. In this view of the limitation, it is, I think, apparent that the words 'should die without lawful issue,' refer to the time of the death of the deceased child of the testator, and the words 'surviving heirs,' have reference to the same period; and hence the limitation is valid by way of executory devise. The case appears to be directly within the authority of *Anderson* v. *Jackson,* in the court of errors of this state. (16 *John.* 382.) In that case it was decided that a limitation after a devise to the sons of the testator A. and B., and their heirs, &c. that if either of the said sons should die without lawful issue, his share should go to the survivor, meant issue living at the death of the son, and was good as an executory devise. (4 *Kent's Com.* 7th ed. 278, *marg. paging, and cases there cited.*)

The case of *Lott* v. *Wykoff,* (2 *Comst.* 355,) is supposed by the counsel for the defendant, to be like the present in principle; but the difference between the two is very marked and obvious. The limitations over, in the former case, were to take effect upon the regular expiration of the primary estates, and were therefore remainders and not conditional limitations; in this case an estate in fee was devised, to be determined upon the contingency specified, and the limitation over is an executory devise.

It follows from the construction of the clause of limitation, above given, Herman having died without issue at his decease, that the plaintiff as one of the surviving heirs or children of William Dumond, named in his will, upon Herman's death, took a share of the premises in question, and consequently is entitled to recover in this action.

Judgment must therefore be given for the plaintiff, pursuant to the stipulation in the case, for one undivided sixth part of the premises in fee, with twenty-five dollars for the rents and profits thereof, and with costs."

The cause was argued on the appeal by

Dumond *v.* Stringham.

*B. Davis Noxon,* for the appellant.

*S. Mathews,* for the respondent.

*By the Court,* WELLES, J. The decision of this case must depend upon the proper construction to be given to the will of William Dumond, the father of the plaintiff. The will was executed, and took effect by the death of the testator, in the year 1813, and must be construed according to the law as it then existed, which was before the revised statutes were enacted. By this will the premises in question were devised by the testator to his son Herman, in the following words : "I give and bequeath to my son Herman Dumond one hundred acres of land, off the west end of my land on lot No. 22 in the town of Fayette, to include the improvements made by my sons David and William Dumond." This language gave the devisee an estate in the premises for his life only, unless other portions of the will manifest an intention in the testator to give a larger estate ; or unless, from a view of all the provisions of the will, such intention can be discovered. It is contended, on behalf of the defendant, that the subsequent clause, by which the testator "allows" his son Herman to give to his, the testator's, son Joseph, common English schooling, at the expense of the said Herman, imposed a personal charge upon the devisee, Herman, in respect of the land devised, the effect of which was to enlarge the estate from one for the life of the devisee, to that of a fee. That the schooling of Joseph is charged personally upon Herman, I think cannot be doubted. The difficulty, if any, is in determining whether such charge was imposed *in respect of the land devised.* All the provisions contained in the will in favor of Herman, are grouped together under one item. They consist of, 1st. The devise of the premises in question ; 2d. The use of a certain meadow, until Joseph should arrive at the age of twenty-one years ; 3d. A legacy of $100, to be paid in hand ; and 4th. The bequest of all the testator's stock of different

kinds of cattle, which had not already been disposed of. Why should the charge of Joseph's schooling, imposed upon Herman, be said to be in respect of one of these provisions in favor of the latter, rather than of another, or in respect of the $100 legacy, the use of the meadow and the bequest of the stock, or of one or more of them, rather than of the 100 acres of land devised, or of any or either, rather than of all ? Will it do to speculate in regard to the extent of the burthen imposed, or the value of any or either of the provisions in favor of Herman ?

It seems to me that the more rational construction is, to regard the charge to have been in respect, or on account, of all the provisions made by the testator in favor of the individual upon whom the charge was personally imposed, which would embrace the devise of the 100 acres of land ; or, if any distinction is to be made between those different provisions, and any one of them regarded as that in respect to which the charge in question was imposed, the devise of the land should be selected, as being apparently the most substantial and adequate to secure the object, which was the schooling of Joseph, then about ten years old. (*Spraker* v. *Van Alstyne,* 18 *Wend.* 200.) If this be the correct view, it follows that the effect of the charge was to enlarge the life estate of Herman in the premises, which the language of the devise, taken by itself, would import, to that of an estate in fee. (*Mesick* v. *New,* 3 *Selden,* 163, *and authorities there cited. Spraker* v. *Van Alstyne, supra.*)

There is another provision in the will which not only shows, by implication, that the testator intended to give to Herman a fee in the premises in question, but defines the kind of fee which he intended to give. After making provision for several of his children, by name, including that for Herman, and after the several devises and bequests, the will proceeds as follows : "My will also is, that if any of my heirs, above mentioned, should die without lawful issue, that the part willed to them should be equally divided between the surviv-

Dumond *v.* Stringham.

ing heirs." By force of this clause, Herman took a *con-ditional fee*, depending upon his leaving lawful issue at the time of his death ; in which case such issue would take, and if he should die without issue the condition would fail, and the limitation over to the surviving heirs of the testator would be effectual by way of an *executory devise.*

It is contended, however, on the part of the defendant, that the limitation is void because of the remoteness of the con-tingency. That the words in the clause of the will last cited— "should die without lawful issue"—mean an indefinite fail-ure of issue. It is not denied that where an executory devise was limited to take effect after the *dying without heirs*, or *without issue*, or *without lawful issue*, or *on failure of issue* of the first taker, such and similar words, at the time this will took effect, imported an indefinite failure of issue ; and the limitation was therefore void, as it might postpone the vesting of the estate in the executory devisee to a remote period, and longer than the law permitted. The courts of England had, for a period of centuries, held that where a testator employed such language in a limitation, he *intended* by them an indefinite failure of issue, unless a different intention could be discovered in the context, or other parts of the will, or from the whole will taken together ; and the courts of this state, finding the rule of interpretation too inveterate to be corrected, short of a legislative enactment, felt constrained to follow it, until the absurdity was swept away by our revised statutes. The rule is, nevertheless, still in force in reference to wills which took effect previous to its abolition.

But whatever were the merits or demerits of the rule, it was one of interpretation of the intention of the testator in the use of the words "dying without lawful issue," or the like, and was always made to yield to other words in the will indicating an intention that the estate limited over should vest upon failure of issue of the first taker, living at his death.

In looking for the intention, in this respect, of the testator

Dumond *v.* Stringham.

in the present case, as the same is to be gathered from all his language on the subject, we cannot fail to discover that intention to have been, that in case of the death of either of his own children, or the grandchild mentioned in the will, without lawful issue living at the time of such death, the property, both real and personal, given to the one so dying, should go immediately to the surviving heirs of the testator. It will be perceived that previous to the clause in the will directing the disposition of the property given, in case of the death of any of his heirs without issue, the testator had made provision for each of his children living, and his grandchild, whose mother, the testator's daughter, was dead, by name, calling them his sons and daughters and grandchild, respectively ; that the case shows that he disposed of all his property, real and personal, by the will and codicil ; that in the clause under consideration he is speaking of any of his *heirs above mentioned* dying without lawful issue, and directing what shall be, in such event, the disposition of "*the part*" of his estate "*willed to them*," respectively. It is therefore clear, that by the use of the words "my heirs above mentioned," he intended his children and grandchild, for whom he had previously made provision in the will; and that by the concluding words of the clause—"*should be equally divided between the surviving heirs*"—he intended the survivors of the same children and grandchild ; and I think it equally clear that by the words "lawful issue," he intended children or issue of the one dying, living at the time of such death. It cannot be supposed that he used the words in the strict technical sense contended for, as that might defeat his intention to give the share to the survivors by postponing the time when it should vest, to an indefinite period. It is, on the contrary, quite apparent, from the whole scope and tenor of the will, that he intended, when one of his said children or the grandchild should die without lawful issue, that his or her share should vest immediately in the survivors. Upon this question I concur entirely in the views expressed by the just-

Dumond *v.* Stringham.

ice who decided the cause at the circuit, as I also do in most of the views of the case expressed by him on that occasion. (*Fosdick* v. *Cornell,* 1 *John.* 440. *Jackson ex dem. Burhans* v. *Blanchan,* 3 *id.* 292. *Ex'rs of Moffat* v. *Strong,* 10 *id.* 12. *Jackson ex dem. Staats* v. *Staats,* 11 *id.* 337. *Anderson* v. *Jackson ex dem. Eden,* 16 *id.* 382. *Jackson ex dem. Herkimer* v. *Billinger,* 18 *id.* 368. *Patterson* v. *Ellis' Ex'rs,* 11 *Wend.* 259. *Cutter* v. *Doughty,* 23 *id.* 513. *Sherman* v. *Sherman,* 3 *Barb.* 385.)

It is contended, with great confidence, by the defendant's counsel, that this case is within the principle of *Lott* v. *Wykoff,* (2 *Comst.* 355.) But it seems to us the cases are clearly distinguishable. The latter case has no application to the present, for the reason that in this, the first devisee, Herman, took a conditional fee, upon which a valid executory devise could be limited, and in that, the primary estates devised were given in tail, which, by the statute abolishing estates tail, were converted into estates in fee simple in the tenants in tail, the instant the will took effect.

If the will in the present case had given Herman Dumond an estate tail in the premises in question, the case of *Lott* v. *Wykoff* would have been in point, and conclusive in favor of the defendant. But it has been shown that Herman took a conditional fee, and that the devise over to the testator's children and grandchild upon failure of the condition, was valid and operative as an executory devise.

It follows that the plaintiff, under the facts established at the trial, is entitled to one undivided sixth part of the one hundred acres in question, and that the judgment at the circuit should be affirmed.

[MONROE GENERAL TERM, December 7, 1857. *Johnson, Welles* and *Smith,* Justices.]