# CASES

# SUPREME COURT OF ALABAMA.

SPECIAL NOVEMBER TERM, 1880.

## Taylor *et al. v.* Harwell *et al.*

*Creditors' Bill in Equity to subject Debtor's Equitable Estate.*

1. *Bequest of rents, profits, or income of property.*—An unqualified devise of the rents and profits of land, or an absolute gift of the profits or income of a chattel, is equivalent to an absolute devise or gift of the property itself, and passes the legal as well as the beneficial interest ; but, when there is a mere power or direction to raise money for the payment of debts or legacies, out of the rents and profits of lands, whether it will charge the lands, or pass any power to raise the money by selling them, is a question of intention, to be determined by the construction of the will.

2. *When pecuniary legacies are chargeable on land.*—The general rule is, that pecuniary legacies are not chargeable on lands, unless the intention so to charge them is manifested by express words, or by fair implication ; and although the courts are inclined to avoid a construction which will leave children unprovided for, or debts unpaid, when the power or direction is intended to provide for children, or for the payment of debts, yet they are not eager to lay hold of circumstances to that end, but rather look to the particular framing of the trust and the intention of the instrument.

3. *Construction of will; general rule.*—In the construction of wills, as of other instruments, the court will look to the circumstances surrounding the testator when the will was made, the state of his property, and the relations existing between him and the persons to whom his property is bequeathed ; and the construction can not be varied by events occurring subsequent to the execution of the will.

4. *Pecuniary legacy payable out of accumulating profits of plantation in hands of trustee.*—Where the testator devised and bequeathed a large plantation, with the slaves and other personal property on it, to a trustee, in trust for two infants, grand-children of his deceased wife ; the property to be managed and controlled by the trustee for their benefit, with an annual allowance to them, "out of the profits of the said plantation," of "such sums of money as, in his discretion, may be right, for their support and maintenance according to their condition in life ; the balance of said profits, if any there be, to be invested in lands or negroes, at his discretion," for their benefit ; "and out of the profits of said plantation, when Fanny," who was the half-sister of said grand-children, "arrives at the age of twenty-one, and not before, the said "trustee is to pay to her the sum of $5,000 ;" *held*, that the legacy to Fanny

(1)

[Taylor v. Harwell.]

was payable out of the net profits of the plantation and other property during her minority, but was not charged on the lands; and the plantation having ceased to yield any surplus profits, in consequence of the emancipation of the slaves before she attained the age of twenty-one, the legacy to her failed.

5. *Bequest in trust for debtor; when liable for debts.*—Testator devised a plantation, with the slaves and personal property on it, to T., "in trust for Mary and William," grand-children of his deceased wife, "subject to the following restrictions: the said T. is to manage and control the said plantation and property for the benefit of the said Mary and William, and to make all the contracts that may be necessary in keeping up the said plantation, and to discharge all the proper debts which may accrue against it; he is to allow the said Mary and William, out of the profits of the said plantation, annually, such sums of money as, in his discretion, may be right, share and share alike, for their support and maintenance according to their condition in life; and the balance of said profits, if any there be, after making said annual allowance to said Mary and William, he is to invest in lands, negroes, or other property, at his like discretion, subject to the conditions herein specified, for the use and benefit of the said Mary and William; and in no event is the principal of this bequest to be interfered with by any one, or parted with, or charged, except it be with the express assent of the said T., or by the express direction of the Chancery Court having jurisdiction for that purpose, on a case regularly brought before it." *Held,* that William's interest in the profits and in the *corpus* of the property, after he and Mary had each attained the age of twenty-one years, might be reached and subjected by bill in equity at the suit of his judgment creditors.

6. *Amendment of decree nunc pro tunc.*—When the lands sought to be subjected by the bill are correctly described in the bill, but, by mistake, the government numbers are incorrectly designated in the chancellor's decree ordering a sale, the decree may be amended at a subsequent term, *nunc pro tunc,* by inserting the proper description.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 4th January, 1871, by John W. Hughes, Mason Harwell, and V. S. Perkins, as judgment creditors of William T. Charles, against their said debtor, and also against Thomas B. Taylor, Fanny Taylor, and the administrator and heirs at law of Mary Goodwyn, *nee* Mary Charles, deceased; and sought to reach and subject to the satisfaction of the complainants' several judgments, on which executions had been returned "No property found," the interest of said William T. Charles in certain lands, which were particularly described in the bill, and which were held in trust by said Thomas B. Taylor under the will of Henry Lucas, deceased. By amendment, the bill was converted into a creditors' bill for the benefit of all other creditors who might come in and contribute to the costs of the suit; and several other judgment creditors intervened by petition, and were made parties complainant. Henry Lucas, the testator, died in 1859, in Montgomery county, where he resided; and his last will and testament was there duly admitted to probate. The clause in the will under which the lands sought to be subjected were held, was as follows:

VOL. LXV.

"I give unto Dr. Thomas Taylor, the son of my deceased wife, in trust for Mary Charles and William Charles, children of Robert Charles, now deceased, and Fanny Charles, the daughter of my said deceased wife, my plantation on the Tallapoosa river, known as my lower plantation on the said river, together with all the property thereon, real, personal, or perishable, and of every kind and description; subject to the following restrictions: the said Thomas Taylor is to manage and control the said plantation, and the property of every kind attached to it, for the benefit of the said Mary Charles and William Charles; he is to make all the contracts which may be necessary to the keeping up of the said plantation, and to pay and discharge all the proper debts which may accrue against it; he is to allow the said Mary Charles and William Charles, out of the profits of said plantation, annually, such sums of money as, in his discretion, may be right, share and share alike, for their support and maintenance, according to their condition in life; and the balance of said profits of said plantation, if any there be, after making said annual allowance to the said Mary Charles and William Charles, he is to invest in lands, negroes, and other property, at his like discretion, subject to the conditions herein specified, for the use and benefit of the said Mary Charles and William Charles; and in no event is the principal of this bequest to be interfered with by any one, or to be parted with, or charged, except it be with the express assent of the said Thomas Taylor, or by the express direction of the Chancery Court having jurisdiction for that purpose, in a case regularly brought before it; and out of the profits of said plantation, the said Thomas Taylor, when Fanny Taylor, the child of Washington Taylor, deceased, and Fanny Taylor, formerly Fanny Charles, arrives at the age of twenty-one years, and not before, is to pay to her, the said child of the said Washington Taylor, deceased, and the said Fanny Taylor, the sum of five thousand dollars; and if the said Fanny Taylor, child of the said Washington Taylor and Fanny Taylor, shall die before arriving at the age of twenty-one years, then, in that case, the said five thousand dollars is to revert back to the said trust estate, and is to be for the use and benefit of the said Mary Charles and William Charles, and is to constitute part of said trust estate, under the direction of the said Thomas Taylor; and in case that between the making of this instrument by me and my death, I shall add any property to the said plantation above described, real, personal, or perishable, then it is my will that the same be considered as a part of the property of the said plantation, and that all such profits thus added to the said plantation

shall become a part of the said plantation, and be under the direction of the said Thomas Taylor as trustee as aforesaid."

The trustee accepted the trust created by the will, and received from the executors the possession of the plantation and other property embraced in the devise; and the testator's estate was finally settled in October, 1867. Mary Charles, one of the devisees named in the bequest, married and died before the bill was filed; and her husband also having died, her children and personal representative were made defendants to the bill. It was admitted that Fanny Taylor, also one of the devisees named in the bequest, was twenty-four years old on the 9th May, 1876; and that Mary and William Charles, each, was older than said Fanny. The prayer of the bill was, that the trustee be compelled to account for his management of the trust estate, and for his disbursements and investments of the profits; that if it should appear he had reserved, out of the profits, a sum sufficient to pay the legacy of $5,000 to Fanny Taylor when she attained the age of twenty-one years, then that the trust be declared terminated, so far as it was for the benefit of said William Charles, and that his interest in the plantation and property be subjected to the payment and satisfaction of the complainants' judgments; or, "if the court has not power to declare the trust terminated as to him, or to subject his interest in the property to the satisfaction of said judgments, then to decree that the trustee shall apply his share of the profits, as the same may be realized, to the satisfaction of said judgments until they be fully satisfied, and that he account to the court for said profits, from time to time, as the court may direct; or, if it should appear that he has not reserved, out of the profits of said trust estate, to be paid to Fanny Taylor, the full sum of $5,000, but has reserved for that purpose as much as will amount to that sum when she shall arrive at the specified age, if invested at legal interest, then to direct him so to invest the sum thus reserved, and to decree that the said trust, so far as it relates to said William T. Charles, be terminated, and that his interest in said plantation and property be subjected to the payment of said judgments; or, if it should appear that he has reserved nothing out of said profits, or has made no disposition or provision for the purpose of carrying out the bequest in favor of Fanny Taylor, then that said trustee be directed to reserve, out of the share of the profits to which said William T. Charles would otherwise be entitled, so much as will amount to one-half of the sum necessary to complete the $5,000 to

[Taylor v. Harwell.]

be paid to Fanny Taylor, from time to time, as the profits may be realized; and when that part of said sum shall be realized for her which is a charge upon his interest in said property, or which is to be realized out of his share of the profits thereof, then to decree that his interest therein shall be subject to the payment of said judgments, or that said trustee shall then apply his share of the profits, as they may be realized, to the satisfaction thereof until they be fully discharged;" and for other and further relief.

The chancellor (Hon. A. C. FELDER) overruled a demurrer to the bill for want of equity, and his decree was affirmed by this court on appeal, 'at its August term, 1876, but "without a consideration of the interesting and important question the bill involves."—*Taylor v. Harwell,* 54 Ala. 596. On hearing on pleadings and proof, the chancellor (Hon. H. AUSTILL) held, that the complainants were entitled to subject the interest of William T. Charles in the profits of the trust estate; and he ordered a reference to the register to ascertain and state an account of the profits, but reserved a decision of all other questions until the report was made. The register reported, that the trustee had realized no profits from the trust estate, and that the interest of said William T. Charles in the net annual rents and profits of the trust property was not sufficient to pay a reasonable allowance for the support and maintenance of himself and family; and the report was confirmed without objection. On final hearing, the chancellor held, that the complainants were entitled to have the interest of said Charles "in the lands described in the pleadings, being an undivided one-half interest, sold for the payment of said debts;" and the decree then proceeded: "To that end, the register is ordered to advertise and sell, as the law directs, the undivided one-half interest of William T. Charles in and to the following described lands," giving the government numbers of the sections, township, and range, and adding—"making 3,473.34 acres, more or less, which lands are in the district of lands subject to sale at Cahaba, and form the plantation known as the Henry Lucas lower plantation on the Tallapoosa river." At a subsequent term, on motion of the complainants, this decree was amended *nunc pro tunc,* by including in the order of sale sections 33 and 34, "so that the description of lands in said decree may conform to the general directions and evident intent of said decree, and to the pleadings and proof in said cause."

The appeal is sued out by Thomas B. Taylor, William T. Charles, and Fanny Taylor, who assign as error, jointly and severally, the final decree, the allowance of the amend-

[Taylor v. Harwell.]

ment *nunc pro tunc*, and the overruling of the demurrer to the bill.

P. T. SAYRE, and D. CLOPTON, for appellants.—1. The only interest William Charles has in the trust property, under the will of Henry Lucas, is to such " support and maintenance," out of the profits, as may be allowed by the trustee. The sole power he has is to create a charge upon the property, by and with the consent of the trustee, or by the direction of a court of equity. The trustee alone is authorized to manage and control the property, to make contracts, to pay debts against the plantation, and to dispose of the profits according to the directions of the will. The profits of the plantation would, necessarily, vary from year to year; and what would be a reasonable allowance one year, might be unreasonable the next. The amount to be allowed, therefore, each year, in the discretion of the trustee, must be governed by circumstances; and no court can control that discretion, or fix the amount to be allowed by the trustee. Unquestionably, the trustee has no power to pay debts contracted by the beneficiaries; how, then, can any court compel their payment? The " use and benefit," for which the property was held by the trustee, was limited and specific— confined to the single purpose of support and maintenance; and therein the case differs from that of *Rugely & Harrison v. Robinson*, 10 Ala. 743. That case, moreover, was decided by a divided court, no two of the judges agreeing in opinion; and it is completely answered by the subsequent decision of the Supreme Court of the United States, in *Nichols v. Eaton* (91 U. S. R. 725), in which it is said : " But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, can not so dispose of it but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due to his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court."

The will gives to Charles nothing but a support and maintenance; and this, at the sole discretion of the trustee, to be ascertained and determined, each year, by the profits. Charles could not maintain a bill against the trustee, to compel him to pay his debts; nor can his creditors maintain such a suit for themselves. He has no assignable interest in the property, or in its profits. The *corpus* of the property is to remain intact. The support and maintenance are to

[Taylor v. Harwell.]

come out of the annual profits; and when no profits are realized, there is no fund to be applied. The discretionary power, vested in the trustee, depends entirely on the existence of annual profits; and its exercise by him, when there are no profits, would be a breach of trust. A court of equity has no power to do what the trustee could not lawfully do, and what Charles could not compel him to do. The right to an annuity can not be converted into a fee-simple estate in the annuitant.—2 Story's Eq. § 1065 a. Even if the court might compel the trustee to make some allowance out of the net profits, it certainly can not destroy the fund out of which the allowance is to be made.

Public policy, it is said, "forbids the disposition of property, divested of its legal incidents"—that is, liability to debts, and capacity of alienation. But public policy does not forbid the disposition of property by the owner so as to protect the State from burdens which might otherwise fall upon it. On the contrary, great charities are established, and trustees appointed to administer them,—as, for the blind, the deaf, &c.; and such charities are fostered and protected. But it was never supposed that such property could be subjected to the debts of the beneficiaries. With equal, if not greater reason, should the owner of property be allowed to provide, after his death, for the support and maintenance of children, or other beneficiaries, whom he could support and maintain while living without the interference of their creditors. His bounty can not, in either case, be an injury to creditors who had no claim on him. To allow them to strip the unfortunate debtor of the food, raiment and shelter, thus provided for him, savors of the barbarism which allowed imprisonment for debt.

The "support and maintenance" of Charles, and the legacy to Fanny Taylor, are equally charges upon the estate; and are both to be paid out of the profits, which must be apportioned for that purpose. The trust is a continuing one, and does not terminate until it is fully executed. A sale of a portion of the estate destroys the trust for Fanny Taylor, or imposes the whole of it on the other half, which would be inequitable. The profits realized from the plantation were not sufficient to pay the legacy to Fanny Taylor; but the legacy is not to fail on that account. A devise of the rents and profits of land is equivalent to a devise of the land itself, and will carry the legal, as well as the beneficial interest, when not given for a limited period.—*Reed v. Reed*, 9 Mass. 372. By a long series of decisions, extending from the reign of Charles II. to the present time, a bequest of the

rents and profits of land, or of a gross sum to be raised out of the rents and profits at a fixed time, or for a definite purpose which can not be delayed beyond a reasonable time, has been construed to authorize a sale of the land, when necessary to raise the sum.—*Backhouse v. Middleton,* 1 Ch. Cas. 173 ; *Shrewsbury v. Shrewsbury,* 1 Vesey, 234 ; *Booth v. Blundell,* 1 Mer. 233 ; *Barnes v. Dixon,* 1 Vesey, sr., 42 ; *Schermerhorn v. Schermerhorn,* 6 John. Ch. 70 ; *Green v. Belcher,* 1 Atk. 505 ; 2 Story's Equity, §§ 1064, 1064 *a.* The legacy to Fanny Taylor is not restricted to the annual profits ; on the contrary, the testator plainly distinguished between *annual profits* and *profits* in its more extended and liberal signification, directing the legacy to Fanny Taylor to be paid out of the profits generally, and not out of the annual profits. The excess of annual profits, over and above the support and maintenance of William and Mary Charles, accruing before Fanny Taylor attained her majority, was to be invested by the trustee in other property, which was to be held by him subject to the provisions of the will ; and this was a part of the fund or property out of which the legacy to Fanny Taylor was to be raised. No doubt, the testator supposed that the legacy to her could be raised out of the profits of the property ; but the whole will shows that he did not intend she should, in any event, be deprived of the benefit of. his bounty.

2. The decree first rendered by the chancellor was perfect on its face, and there is no contention as to its proper entry by the register. There is no evidence that any other decree was rendered, or intended to be rendered by him. The office of an entry *nunc pro tunc* is to place on the record the judgment actually rendered. After the term of the court has expired, the judicial power of the judge ceases, as to the matters then disposed of ; and his only power, at a subsequent term, is to correct the record, on legal evidence, so as to make it show what was actually done. The failure of the court to act, or its incorrect action, does not authorize an entry *nunc pro tunc.*—Freeman on Judgments, §§ 56, 61, 68. A mistake in the verdict of a jury, however palpable, is not a clerical misprision.—*Traun v. Wittick,* 27 Ala. 570. The mistakes or errors of a chancellor are not clerical—they must be judicial, and revisable on error or appeal, or by bill of review.—*Ex parte Cresswell,* 60 Ala. 378 ; *Bank of Kentucky v. Wistar,* 8 Curtis, U. S. 473 ; *Cameron v. McRoberts,* 4 Curtis, U. S. 303 ; *U. S. Bank v. Massachusetts,* 16 Curtis, 590 ; *Metcalf v. Metcalf,* 19 Ala. 319 ; *Moody v. Keener,* 9 Porter, 252 ; 2 Dan. Ch. Pr. 1233. As to the general power of courts

[Taylor v. Harwell.]

to amend judgments, see *Ex parte Sibbald*, 12 Peters, 482; *Gibson v. Wilson*, 18 Ala. 63; *Johnston v. Glasscock*, 2 Ala. 522; *Dickens v. Bush*, 23 Ala. 849. The first part of the decree, deciding that the complainants were entitled to have the lands described in the pleadings sold, &c., conferred no authority on the register to sell them; and the subsequent directions to him, containing a particular description of the lands to be sold, were necessary to give him authority. That special words limit and control general words, see *Jackson v. Stackhouse*, 1 Cow. 126; Sedgw. on Stat. and Const. Law, 423. If the general words are to control the special directions, then no amendment was necessary.

W. H. GRAVES, E. J. FITZPATRICK, and D. S. TROY, *contra*. 1. The policy of the law "forbids the disposition of property, divested of its legal incidents, liability to debts and susceptibility of alienation."—*Smith v. Moore*, 37 Ala. 331; Hill on Trustees, 395; 2 Ired. Eq. 184; 1 Jarman on Wills, 816; 2 Story's Equity, § 974 a, and authorities there cited. The principle is settled in this court, that a beneficial interest in property can not be conferred on a debtor, so that it can not be reached by his creditors, unless such interest is to be conferred and is to be enjoyed jointly with others, and is incapable of severance.—*Rugely & Harrison v. Robinson*, 10 Ala. 702; *Robertson v. Johnston*, 36 Ala. 197; *Hill v. McRae*, 27 Ala. 182; *Smith v. Moore*, 37 Ala. 327. The English cases are, almost without exception, in perfect harmony with these authorities.—*Brandon v. Robinson*, 18 Vesey, 429; *Foley v. Burnell*, 1 Bro. C. C. 274; *Graves v. Dolphin*, 1 Sim. 66; *Greene v. Spicer*, 1 Russ. & Myl. 395; *Snowden v. Dales*, 6 Sim. 524; *Yarnold v. Moorehouse*, 1 Russ. & Myl. 364; *Rippon v. Norton*, 2 Beavan, 64; *Younghusband v. Gisborne*, 1 Coll. 400; *Piercy v. Roberts*, 1 Myl. & K. 4. See, also, 1 Perry on Trusts, 472–3. These authorities show, also, that neither the interposition of a trustee, as the holder of the legal title, nor a discretion given to him as in this case, affects the principle, or prevents the subjection of the beneficial interest of the debtor to the payment of his debts. The test is, whether his interest is capable of severance and separation without injury to the rights of other beneficiaries who are also interested in the property; and this is determined by the terms of the will, which gives to William and Mary separate and distinct interests in the profits, and in the property itself on the termination of the trust. The legacy to Fanny Taylor can have no effect on the rights of these parties, having failed entirely through the utter failure to realize any annual profits, out of which it was payable.

[Taylor v. Harwell.]

2. The amendment *nunc pro tunc* of the decree was authorized by the statutes of amendment, and by the rules regulating the practice in chancery.—*Ford v. Tinchant*, 49 Ala. 567; *Cook v. Hall*, 7 Paige, 188; *Murray v. Blachford*, 2 Wendell, 221; 2 Dan. Ch. Pr. 1263–4, 1277, note 3; *Ib.* 1319–20, and cases cited in note.

BRICKELL, C. J.—The first proposition presented and discussed by the counsel for the appellants, which we propose to consider, is, that the legacy to Fanny Taylor is charged, not only on the profits of the plantation, but on the *corpus*, or principal of the property, real and personal, devised and bequeathed in trust for Mary and William Charles, if, as has proved to be the case, the annual profits, after supporting and maintaining Mary and William, would not, when she attained twenty-one years of age, the time when the legacy was payable, yield a sum sufficient for its payment. It is certainly true, as is insisted, that an unqualified devise of the rents and profits of lands, or an absolute gift of the profits or income of a chattel, is the equivalent of a devise of the lands, or of a gift of the chattel, and will pass the legal, as well as the beneficial interest.—2 Jarman on Wills, 380, marg. 534. But when, as in the present case, there is a mere power, or direction, to raise money for the payment of debts, or of legacies, out of the rents and profits of lands, whether it will charge the lands, or pass any power to raise it by a sale of them, is a question of much perplexity. It is to be solved, as are all questions arising on the construction of wills, by ascertaining the intention of the testator, which is the governing principle, or, as it is sometimes expressed, "the law" of the instrument.

The rule is general, that pecuniary legacies are not chargeable on lands, unless the intention to charge is manifested by express words, or by fair implication.—*Wright v. Dean*, 10 Wheat. 204; *Lupton v. Lupton*, 2 Johns. Ch. 623; *Parker v. Fearnely*, 2 Sim. & Stu. 592; *Lewis v. Darling*, 16 Howard, 1. When the direction or power is to raise portions for children, or a fund for the payment of debts, the courts have inclined to avoid a construction which would leave the children unprovided for, or the debts unpaid; a result not consonant with the natural affections of the testator, or with the sense of justice which, it is fairly presumed, must be keenly felt, when solemnly declaring a disposition of property to take effect after death.—2 Perry on Trusts, §§ 677–682½; 2 Jarman Wills, 380–87, marg. 534–542; 2 Story's Eq. 1064–65. Hill on Trustees, 532. But, as was said by Lord Eldon, in *Codrington v. Foley*, 6 Vesey, 380, the court ought not to be

eager to lay hold of circumstances, but to hold an equal mind, looking to the particular framing of the trust, and the intention of the instrument.

In the construction of wills, as in the construction of other instruments, the courts may and ought to look to the circumstances surrounding the testator when the will was made, to the state of his property, and to the relations existing between him and the recipients of his generosity; and the construction cannot be varied by events subsequent to the execution. It is from the death of the testator the will speaks—it must be construed as it would have been the moment of death, in view of then existing circumstances, without regard to inconvenient consequences resulting from subsequent events, which the testator did not foresee nor anticipate.—*Jackson v. Bellinger*, 18 Johns. 381.

The intention of the testator to create a trust for the payment of the legacy to Fanny Taylor is clear, and cannot be doubted. Nor can it be doubted that he intended the payment of the legacy should be made from the profits of the *plantation*. When the will was made, and at the death of the testator, it was not only possible, or probable, but, so far as certainty could be asserted in reference to a matter of the kind, it was certain, the *profits of the plantation* would yield, not only a support and maintenance to Mary and William Charles, but a sum sufficient for the payment of the legacy, and funds for accumulation and investment under the trusts for these purposes, before Fanny, who, at the death of the testator, was not more than eight years of age, would reach majority, when the legacy was payable. The disappointment results from the calamities of war, and the events of political revolution—the destruction of the personal property, which was indispensable to the derivation of the profits the testator had derived, and which he contemplated would continue to be yielded from the cultivation of the plantation. The term *plantation*, as it is used in the devise, comprehended not only the lands, but the slaves and other personal property on the lands, employed and useful in their cultivation. Such a comprehensive use of the term was very common when the will was executed, and at the death of the testator, in the community in which he lived and died; and the term *profits*, when applied to the cultivation of a plantation, had then a general, popular signification. It was never confounded with rents, or with proceeds; it denoted the annual gain, or income, from the sale of products, after a deduction of the expenses of cultivation. There was no deduction because of the value of the labor, for the labor was the property of the owner, as was the land cultivated. It is

in this sense, it is evident, the word was employed in the trust for the payment of the legacy to Fanny. From the annual gain, or income, derived from a sale of the products of the plantation, it was contemplated and intended by the testator, a fund would be accumulated for the payment of the legacy, before she reached twenty-one years of age. The trustee was directed to allow Mary and William, out of the profits of the plantation, annually, such sums of money as in his discretion were right, according to their condition in life, share and share alike, for their support and maintenance ; and the balance of such profits, if any, he was to invest. It seems clear, therefore, that the term *profits* was employed in its then ordinary and popular signification, as denoting the annual gain or income derived from a sale of the products, deducting the expenses of cultivation. Such is its meaning in the trust for the support and maintenance of Mary and William, who, it is apparent, were the primary objects of the testator's bounty ; and there is nothing in the context which would justify its deflection from that meaning in the trust in favor of Fanny.

The trust, in its entirety, is to raise the money to satisfy a legacy to one having no relation to the testator—with no claims upon his natural affections, and for whom he was under no duty of providing. It is not a trust to raise a portion for a child, who would be unprovided for if the *corpus* of the estate is not charged with its payment. It is to be raised *out of the profits of the plantation*, and is not a charge upon the plantation.—2 Roper Leg. 148 ; *Wilson v. Halliley*, 1 Russ. & Mylne, 590 ; *Heneage v. Lord Andrew*, 3 You. & Jer. 360.

It is clear, too, that the testator intended it should be raised from the profits accruing before Fanny became twenty-one years of age, and not from profits subsequently accruing. An analysis of the disposition shows plainly its true character. The whole legal estate resides in the trustee, for the benefit of Mary and William Charles primarily—it is for them the *corpus* is to be preserved, and the surplus of profits, if any there should be, accumulated, and converted into principal. There is a trust of the profits declared, first, for the support and maintenance of Mary and William ; second, to accumulate in the period intervening after the death of the testator, and before Fanny Taylor became twenty-one years of age, five thousand dollars for the payment of the legacy to her. There is, in other words, a gift, not of five thousand dollars, referring to these profits as a fund for its payment, but a specific gift of five thousand dollars of the profits accumulating within the particular period, there being deducted from such profits, annually, a sum sufficient for the

[Taylor v. Harwell.]

comfortable support and maintenance of Mary and William. A failure of profits disappoints the gift—the thing given does not exist, and there can be no compensation made to Fanny from estates or property otherwise devised or bequeathed by the testator. It is of the nature of all such specific gifts, that they fail by failure of the fund of which they are a part, or of the source from which they are to be derived.—1 Roper Leg. 195.

The second proposition pressed in support of the assignment of errors is, that the interest of William in the profits, or in the *corpus* of the estate, cannot be subjected to the satisfaction of his debts. It is said the profits cannot be reached, because the amount which was allowable to him depended upon the discretion of the trustee, which cannot be controlled; and the *corpus*, or principal, cannot be reached without infringing the clause of the gift declaring that, in "no event, is the principal of the bequest to be interfered with, by any one, or be parted with, or charged, except by the express assent of said Thomas Taylor, or by the express direction of the Chancery Court having jurisdiction for that purpose, in a case regularly brought before it." We do not deem it necessary to consider or discuss the proposition, at length. The law in reference to it is settled conclusively by former decisions of this court, from which we cannot depart. There cannot be a legal or equitable right in or to property, or to its rents, income, or profits, not so blended with the rights of others as to be incapable of separation and identification, that may not, by some appropriate remedy, in law or in equity, according to the nature of the case, be condemned to the satisfaction of debts. It is violative of public policy, and in fraud of the rights of creditors, to create a well-defined beneficial interest, legal or equitable, in property, real or personal, or in its rents, income, or profits, which can be enjoyed by an insolvent debtor, free from liability for the payment of debts. Laws have been enacted, constitutional provisions have been ordained, by which the roof that shelters, and such personal property as may be necessary to save the unfortunate debtor, or his family, from being reduced to absolute want, is relieved from liability to debts subsequently contracted. The policy of such laws the courts have upheld and enforced. They work no fraud or injury; for of them the creditor has knowledge when his debt is contracted, and is informed that the property exempt is withdrawn from liability to its payment. But, as to property not thus exempt, the policy of the law is that it shall not be enjoyed while creditors are unpaid. It is not of importance that it is acquired subsequent to the contracting

[Taylor v. Harwell.]

of the debts. Future acquisitions, whether the fruit of the debtor's thrift, energy, industry, skill and intelligence, or descending to him by operation of law, or gifts proceeding from the mere generosity of others, when he is clothed with ownership, are a source from which creditors may well anticipate satisfaction of their debts.

In *Rugely v. Robinson*, 10 Ala. 731, it was said by Judge ORMOND: "I understand the law to be, that no one can have a legal or equitable right to property, which is not subject to the payment of his debts, either at law, or by a proceeding in equity, according to the nature of the case." And in the same case, it was said by Judge GOLDTHWAITE : "I hold it to be entirely clear, that whatever a debtor can himself claim to enjoy as a general use, benefit or interest, in property capable of separation and division, may be reached by his creditors." It was further said by Judge ORMOND : "In my opinion, ingenuity cannot devise a plan, by which one can have the use and benefit of property (with the exception of a joint use not capable of severance), in defiance of his creditors. No matter what guise it may assume, whether it is in the shape of a maintenance in the discretion of trustees, or whether, as in this case, it is openly avowed to be for his use and benefit, in every conceivable case, where he takes a beneficial interest, it may be subjected to the payment of his debts." This doctrine has been reaffirmed, after careful consideration, in two subsequent cases—*Robertson v. Johnston*, 36 Ala. 197 ; *Smith v. Moore*, 37 Ala. 329.

An absolute, unqualified discretion to withhold, or to appropriate rents, income, or profits, to the support of a beneficiary, it may be, can be conferred on a trustee ; and it may be that, when it is conferred, neither the *cestui que trust*, nor a creditor asserting his rights, can invoke the interference of a court of equity to direct or control it. In reference to such a case, there would be, perhaps, a qualification of the rule so broadly stated by Judge ORMOND. We do not enter on that question ; for, in the present case, the discretion conferred on the trustee cannot be regarded as of that character. Though it was contemplated he would be careful and prudent in expending the profits in the maintenance of Mary and William, upon them separately was conferred a clear, substantial right to support and maintenance, which he could not disappoint; and if he had been refractory in the exercise of his discretion, a court of equity would have intervened for their relief. It is apparent, too, that the interests of Mary and William in the *profits* are not blended. They do not take jointly, but in common—*share and share alike*, in the words of the devise—thus distinguish-

[Taylor v. Harwell.]

ing the interests of each, instead of blending them. Now, it cannot be debatable, that an interest of this character, which a debtor can successfully assert and enforce in his own name, is subject to the payment of his debts.

The undivided equitable estate of William, it is, if possible, freer from doubt, is liable to the claims of creditors. We shall not stop to inquire, whether, by the event of Fanny Taylor and of Mary and William having attained majority, the estate of the trustee has not expired, and Mary and William are not now, by operation of the statute (Code of 1876, § 2185), clothed with the legal, as well as the equitable estate. The duration of the legal estate is measured by the character, necessities, and exigencies of the trusts declared; and it will be construed to continue only so long, and to be of the character necessary for him to discharge them. The trusts were all declared in view of the minority and consequent disabilities of the beneficiaries, well adapted for the preservation of the estate and their protection while they were not *sui juris*; but it is difficult to suppose it was intended the powers of the trustee, or his estate, should continue after the necessity for them ceased. Be this as it may, the beneficial or equitable estate had all the incidents, properties, characteristics and consequences, of a corresponding legal estate in fee simple. It was descendible, devisable, and alienable. If either Mary or Charles had died intestate, it would, as a pure fee simple at law, have descended to heirs; or, if attaining majority either had devised it, the devisee would have succeeded to it. It could have been aliened, in any proper mode of conveyance, by either, after attaining majority. Having these incidents, properties and qualities, it results that, by operation of law, it is liable *in invitum*, like any other property, to the payment of debts.—2 Story's Eq. § 974. If the clause of the devise in reference to *charging or parting with it*, was intended to operate after the devisees became of age, and is in restraint of the power of the donee to alienate, it is repugnant to the gift, and is void.

The only remaining question relates to the amendment of the decree, by inserting in it by proper description a part of the lands omitted originally by inadvertence. It may be admitted that it is not the office of an amendment *nunc pro tunc*, to cure the imperfection or impropriety of a judgment or decree as actually rendered; but to supply omissions, or to correct errors in its entry of record. It cannot cure the inaction, or the erroneous action of the court; and it presupposes that the judgment, as it is proposed it shall be entered, was the judgment really rendered. The error to be cured is the inadvertence or omission in its entry. When we look to

the record, all the proceedings prior to the rendition of the decree, we find that the controversy was whether the interest or estate of William in the whole of the lands devised should be subjected to the judgments of the complainants. In the pleadings the lands are described according to the government surveys. There was no pretense that one part of the lands were or might be liable, while another part, on some peculiar ground, was free from a like liability. When we look to the decree rendered, there is a plain purpose to determine the whole controversy—not to adjudicate as to a part of the lands, or, while subjecting a part, to free another from liability. It is plain, too, that the judicial mind passed upon, and pronounced sentence that the share of William in the profits, and his undivided half interest *in the lands described in the pleadings*, should be condemned and appropriated to the payment of his creditors who were parties. It is in the order to the register to make sale, that the chancellor proceeds to describe the lands by their government surveys, as they were described in the pleadings, and by inadvertence omits a part. A judge, as well as a clerk or register, may fall into errors of this character; and it would be a reproach to justice, if they could not be corrected when discovered, from the clear and conclusive evidence the record furnishes. It is not the entry of a judgment never rendered, but the entry of the judgment as rendered, by inadvertence not correctly entered when rendered.

We find no error in the record, and the decree is affirmed.

STONE, J., not sitting.