319 So.2d 267

**Joe BARKSDALE et al.**

v.

**Rita Jan Gray PENDERGRASS.**

**SC 1310.**

Supreme Court of Alabama.

Sept. 25, 1975.

Charles M. Scott, Fort Payne, for appellee.

Beck & Beck, Fort Payne, for appellants.

MERRILL, Justice.

Mrs. Mamie C. Henry, a widow, died on October 18, 1972. She had no children, but was survived by a number of nieces and nephews.

No duly executed will was found and Joe Barksdale, a nephew of Mrs. Henry, was appointed administrator of her estate.

Later, Rita Jan Pendergrass, formerly Rita Jan Gray, filed a petition in the Probate Court of DeKalb County to probate an alleged lost or destroyed will of Mamie C. Henry. A copy of the will was made an exhibit to the petition. According to its terms, Mrs. Henry left all of her property to Rita Jan Gray and appointed her as executrix.

Joe Barksdale and Olen Barksdale filed a contest and the case was transferred to the circuit court, where it was tried before a jury. The grounds of the contest were that the purported will was never duly executed, or, that if executed, was destroyed by Mrs. Henry prior to her death.

The jury found in favor of the proponent, Rita Jan Gray Pendergrass. Judgment was entered ordering the will admitted to probate. A motion for new trial was denied and the Barksdales appealed.

■ In a proceeding to probate an alleged lost or destroyed will, the burden is on the proponent to establish, to the reasonable satisfaction of the judge or jury trying the facts:

(1) The existence of a will—an instrument in writing, signed by the testator or some person in his presence, and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator. Tit. 61, § 24, Code 1940; *Lovell v. Lovell,* 270 Ala. 720, 121 So.2d 901; *Jordan v. Ringstaff,* 212 Ala. 414, 102 So. 895;

(2) The loss or destruction of the instrument. *Brunson v. Brunson,* 278 Ala. 131, 176 So.2d 490; *Lovell v. Lovell,* supra; *Jordan v. Ringstaff,* supra;

(3) The nonrevocation of the instrument by the testator. *Lovell v. Lovell,* supra; *Jaques v. Horton,* 76 Ala. 238;

(4) The contents of the will in substance and effect. *Lovell v. Lovell,* supra; *Jordan v. Ringstaff,* supra.

■ The first question then is whether there was a validly executed will. It is not necessary that the attestation be at the personal request of the testator. It is sufficient if done in testator's presence with his knowledge and consent expressed or implied. *Fulks v. Green,* 246 Ala. 392, 20 So.2d 787; *Ritchey v. Jones,* 210 Ala. 204, 97 So. 736.

■ The testator does not have to tell the subscribing witnesses that the instrument is his will, or to inform them of its contents. *Fulks v. Green,* supra; *Massey v. Reynolds,* 213 Ala. 178, 104 So. 494.

■ It is not necessary for the witnesses to actually see the testator sign his name. *Ritchey v. Jones,* supra; *Woodruff v. Hundley,* 127 Ala. 640, 29 So. 98. The testator may acknowledge to the subscribing witnesses that it is his signature on the instrument by his express words or by implication from his conduct and from the surrounding circumstances. *Fulks v. Green,* supra; *Stuck v. Howard,* 213 Ala. 184, 104 So. 500.

Assignments of Error 31, 33, 34 and 35 are that the trial court erred in overruling appellants' motion for new trial. Appellants argue the ground of the motion that the verdict was not sustained by the great preponderance of the evidence.

The evidence produced at trial showed that Charles M. Scott, a Ft. Payne attorney, prepared a will for Mrs. Henry in November of 1963. She did not execute the will in Scott's office because she wanted to "get her own witnesses" in Collins-

ville where she lived. Scott subsequently made several minor changes in the will and mailed her a final version in January of 1964. Rita Jan Gray was named as beneficiary in every version of the will.

■ The evidence also showed that sometime around 1964, Bill Cook, Jack Farmer and Cecil Sharp met at Sharp's funeral home and witnessed Mrs. Henry's signature on a document. The testimony adduced at trial indicated that there was some doubt as to whether each of the witnesses knew that the document was a will. Jack Farmer was deceased at the time of the trial. Witness Bill Cook thought that Mrs. Henry mentioned that the document was a will at some time, but Cecil sharp could only say that Mrs. Henry wanted him to witness a signature. Nevertheless, it is apparent that the requirements of Tit. 61, § 24, supra, were met since both Cook and Sharp witnessed a signature which Mrs. Henry acknowledged as her own.

The second thing which the proponent must prove is the loss or destruction of the instrument. Billy McDowell, who rented an apartment from Mrs. Henry between 1967 and 1969, testified that Mrs. Henry showed him a will; that she said Charles M. Scott prepared it; that Cecil Sharp's name was on the will as a witness, and that Rita Jan Gray was the sole beneficiary. He also said that Mrs. Henry kept the will in a purse under a mattress in a spare room. Floyd Gray, the father of the beneficiary, testified that he saw one of Mrs. Henry's nephews at her house shortly after her death. Willard Reaves, an employee of the funeral home, testified that several of Mrs. Henry's relatives visited her house that day after she died. There was also an abundance of testimony that the will might have been lost or destroyed by accident. Finally, attorney Scott testified that several weeks after Mrs. Henry's death he searched the house himself. Proponent Rita Jan Gray Pendergrass subsequently filed an application to compel production of the will. Appellants Barksdale responded "That the said purported will, if

executed, has been destroyed prior to the death of the Testatrix, and was not found in her possession nor among has [sic] effects at the time of her death, and is presumed, if ever executed, to have been destroyed in accordance with law."

■ The third element of proof involved the presumption of revocation. When the will is shown to have been in the possession of the testator, and is not found at his death, the presumption arises that he destroyed it for the purpose of revocation; but the presumption may be rebutted, and the burden of rebutting it is on the proponent. *Lovell v. Lovell,* supra; *Jaques v. Horton,* supra.

■ Billy McDowell, attorney Scott, and Mildred Johnson, a former neighbor of Mrs. Henry, testified that Mrs. Henry said that she did not want her nieces and nephews to have anything she had; that she had always made it abundantly clear that she wanted to select somebody other than her nieces and nephews; that she was afraid they were going to get her property; that she knew that her nieces and nephews would get her property if she died intestate; that she wanted Rita to have it, and that this was her fixed opinion.

Finally, proponent offered the copy of the will in evidence as proof of its contents.

A jury question was adequately presented under the authorities cited supra, and the jury found for the proponent.

■ The refusal of the trial judge to grant a new trial on the ground that the verdict is contrary to the weight of the evidence will not be reversed unless, after allowing all reasonable presumptions as to its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court reviewing the cause on appeal that it is wrong and unjust. *Alabama Great Southern Railroad Co. v. Evans,* 288 Ala. 25, 256 So.2d 861; *Southern Railway Co. v. Reeder,* 281 Ala. 458, 204 So.2d 808.

After reviewing the record, we cannot say that the trial judge erred in denying appellant's motion for new trial.

Assignment of Error 17 is that the trial court erred in overruling appellants' motion for a directed verdict. Clearly, there was a scintilla of evidence under the law of the case as outlined above. ARCP 50(e).

■ Assignment of Error 16 is that the trial court erred in admitting into evidence the unsigned and unwitnessed copy of Mrs. Henry's will. Appellants contend that before a purported copy of a lost will may be introduced into evidence, the proponent must overcome the presumption of destruction.

This question was considered in *Jaques v. Horton,* supra, where it was said:

"* * * Sufficient search appears to have been made for the original will, to let in secondary evidence of its contents, after proof of its execution and existence; and whether the will was destroyed by the testator *animo revocandi,* or by some one else without his consent or knowledge, or lost by accident, is a question not going to the admissibility of a verified copy, but a fact to be determined by the jury, if there be one, and if not, by the judge, on a consideration of all the circumstances proved. Where the will is shown to have been in the possession of the testator, and is not found at his death, the presumption arises that he destroyed it for the purpose of revocation; but the presumption may be rebutted, and the burden of rebutting it is on the proponent. The ascertainment of this fact will cast no light on the *authentication* of the copy, and is not preliminary to its introduction. * * *"

But appellants contend that the copy of the will was not admissible in evidence because neither Bill Cook nor Cecil Sharp could identify the copy. They did not read the will and it was folded so that only the witness signature lines were visible.

■ While the usual method of authenticating a copy is by the testimony of someone who has compared the copy with the original and found the copy to be correct, other evidence may suffice. The case of *Ford v. Teagle,* 62 Ind. 61, answers appellants' contentions where it states:

"On the trial it was proved by Andrew Meredith, that in August, 1864, he wrote a will for the decedent at his request, but it does not appear to have been signed by the deceased in the presence of Meredith or attested by witnesses. The will was written at the house of Meredith, in Wayne township, Wayne county, Indiana, and the deceased took the will away and started to William Conner's with it. The witness saw the deceased about an hour afterward, just as he had come out of the house of Conner, with Mr. Conner and John Meredith. The witness never saw the will after the deceased took it away from his house.

"It was proved by William Conner, that he lived about a mile from Andrew Meredith's; that in August, 1864, the deceased called at his house and desired him to attest his will. The evidence is a little uncertain as to whether Teagle signed the will at Conner's or had signed it before. Conner said that 'Thomas Teagle's name was to it.' Conner and John Meredith signed the will as witnesses, at the request of Teagle. John Meredith testified to the attestation of the will by himself and Conner, and his impression was that the will was signed by Teagle at Conner's house.

"At the proper time the plaintiff offered to prove by Andrew Meredith the contents of the will thus written by him for the deceased; but on objection being made the evidence was rejected, apparently on the ground that the witness could not state of his own knowledge that the will which he had prepared was the same will which had been thus attested at Conner's, the witness not hav-

ing seen the will which he had prepared, since the deceased took it away. * * *

"We think the evidence offered was competent and should have been received. Though the witness may not have known that the will which he wrote was the same as the one which was thus attested, it might, from the evidence given, have been reasonably inferred that it was. There was certainly evidence tending to show that it was; and, if it was the same will, it was important to establish its contents."

In the instant case, Billy Mc-Dowell testified that Mrs. Henry showed. him her will; that he remembered seeing Cecil Sharp's signature; and that Mrs. Henry told him that attorney Scott had written the will, and that Rita Jan Gray was her sole beneficiary. It would appear that there was sufficient evidence from which to identify the copy.

Assignments of Error 2, 3, 5, 6, 7, 8, 9, 10, 14 and 15 charge that the court erred in overruling various objections to the introduction of evidence concerning the execution of the will and whether the witnesses were, in fact, aware that the document was a will. Since we have already stated that the will was properly executed, we need not consider these assignments.

Assignments of Error 1, 11, 21 and 22 are that irrelevant and immaterial evidence was admitted over appellants' objection. We are convinced that if there was any error in admitting this evidence, it was without injury. Supreme Court Rule 45. An example is Assignment 1 which charged error in the failure of the court to exclude the answer to the question, "During that time did they become close? Did Mrs. Henry and Rita become close? A. Oh, yes, and Mr. Henry thought Rita hung the moon." The non-responsive part of the answer should have been excluded but in context of the testimony, the colloquialism as to what Mr. Henry "thought" did not amount to prejudicial error.

Other argued assignments of error are concerned with the refusal of the court to give some 5 written requested charges for the appellants.

ARCP 51 provides:

" * * * No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. * * *"

The record shows no such objection. Thus, any error connected with these charges must be deemed waived.

Affirmed.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.