This is an appeal from a will contest case in which the Circuit Court of Madison County held valid and admitted to probate and record an instrument purporting to be the last will and testament of Claude L. Stiles. The facts of this case, which were stipulated by the parties, are as follows:
Claude L. Stiles, a resident of Madison County, Alabama, died on March 7, 1978, leaving no surviving spouse, three surviving children, and three surviving grandchildren who are the children of a fourth child who predeceased Claude L. Stiles. The proponents of the document sought to be admitted as the last will and testament of Claude L. Stiles are Eva Stiles Brown and Susie Stiles Sharp, the daughters of Claude L. Stiles. On May 5, 1978, Eva Stiles Brown and Susie Stiles Sharp, having been appointed co-executrices in said document, petitioned the probate court to issue to them letters testamentary. The contestant of the will offered by Eva Brown and Susie Sharp is their brother, Ernest L. Stiles, who filed a contest to said will on May 8, 1978.
The will in question was prepared for Claude L. Stiles by Mr. James T. Tatum, Jr., a Huntsville Attorney, and was executed in Mr. Tatum's office on January 12, 1967. On that date, two wills were prepared simultaneously, using carbon paper, and each will was simultaneously executed, thus creating two executed duplicate original wills. One of the duplicate originals was placed in Mr. Tatum's safe and the other Claude L. Stiles took home with him after execution of the duplicates. At that time, and again on November 5, 1975, Mr. Tatum advised Mr. Stiles that if he desired to revoke the last will and testament, he would have to destroy both the duplicate original in his own possession and the one Mr. Tatum had in his possession. The duplicate original will which Claude L. Stiles had in his possession prior to his death was not found among Mr. Stiles's possessions on his death on March 7, 1978. On or about March 24, 1978, Mr. Tatum learned of the death of Claude L. Stiles, and delivered the executed duplicate original will of Claude L. Stiles, which he had in his possession, into the custody of the Probate Court of Madison County.
The appellants argue that the trial court erred in admitting to probate this document as the valid last will and testament of Claude L. Stiles because (1) the proponents fail to account for the duplicate original will which had been in the possession of Claude L. Stiles, (2) a presumption of revocation of the original duplicate will in Claude L. Stiles's possession arises when the will is not found at the testator's death, and (3) this revocation of an original copy of a will revokes all other executed copies of the will. *Page 794 
 SCOPE OF REVIEW
When the trial court hears evidence ore tenus its judgment is presumed correct and will not be disturbed on appeal unless plainly and palpably erroneous. League v. McDonald,355 So.2d 695 (Ala. 1978). In the instant case the parties submitted an agreed statement of facts together with answers to interrogatories and affidavits, thus limiting the trial court's task to an application of the law to those facts. Where the facts of a case are uncontradicted the rule of law which states that the appellate court must defer to the trial court in regard to findings of fact has no application.
 The finding of the trial court in a case submitted to it on an agreed statement of ultimate facts presents a question of law, and the appellate court, having the same means as the trial court had of reaching a correct conclusion of law on the facts will consider it as if trying the case originally in order to determine whether the facts warranted the judgment.
5A C.J.S. "Appeal and Error" § 1661 p. 580 (1958).
Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts. Kessler v. Stough, 361 So.2d 1048 (Ala. 1978); Perdue v.Roberts, 294 Ala. 194, 314 So.2d 280 (1975); and McCulloch v.Roberts, 292 Ala. 451, 296 So.2d 163 (1974).
 ISSUE NUMBER ONE
Whether the executed duplicate original will which was retained by the testator's attorney is admissible into evidence when the other duplicate original will which had been retained by the testator himself is not found at the testator's death.
The appellant, relying on Brunson v. Brunson, 278 Ala. 131,176 So.2d 490 (1965), contends that the proponents of the duplicate executed will must show a search for the original will left in the testator's possession or otherwise explain its absence before an executed copy in possession of the lawyer who prepared the will may be admitted to probate. We agree with the appellant. See also: Lovell v. Lovell, 270 Ala. 720,121 So.2d 901 (1960); Jaques v. Horton, 76 Ala. 238 (1884). However, the record is replete with evidence, including interrogatories, answers thereto, and affidavits, which indicates that a careful search was made of the business records of the testator as well as his safe deposit box and that the will was not discovered in the course of that search. We hold the evidence sufficient to support the trial court's holding that the requirements of our case law for admission into evidence of a duplicate original will other than the one retained by the testator were met in the instant case. In Jaques v. Horton, supra, the Court held that the inability to find the copy of a will which had been in the testator's possession prior to his death did not give rise to a question of the admissibility of another copy of that will but rather presented a completely separate question of whether the testator had destroyed his will with an intent to revoke it.
 Sufficient search appears to have been made for the original will to let in secondary evidence of its contents after proof of its execution and existence; and whether the will was destroyed by the testator animo revocandi or by someone else without his consent or knowledge or lost by accident is a question not going to the admissibility of a verified copy but a fact to be determined by the jury if there is one and if not by the judge on a consideration of all the circumstances proved. Where the will is shown to have been in the possession of the testator and is not found at his death the presumption arises that he destroyed it for the purpose of revocation; but the presumption may be rebutted and the burden of rebutting it is on the proponent. The ascertainment of this fact will cast no light on the authentication of the copy and is not preliminary to its introduction. The question, in such case, is, whether the will of which the proposed paper is a copy was revoked or did the testator at the time of *Page 795 
his death believe and intend it to be in existence as a valid will. [Citations omitted.]
76 Ala. at 245.
If a copy of an executed will is admissible into evidence after an adequate search, then there is all the more reason to admit a duplicate executed original will retained by a third party after an adequate search for the duplicate original retained by the testator.
 ISSUE NUMBER TWO
Did Claude L. Stiles destroy his will animo revocandi?
In Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d 267
(1975), this Court set forth the requirements for admitting to probate an allegedly lost or destroyed will and held that the burden is on the proponent of the will to establish: (1) the existence of a will, (2) the loss or destruction of the instrument, (3) the non-revocation of the instrument and (4) the contents of the will in substance and effect. In the instant case the appellant argues that the appellees have failed to establish element number 3, i.e., the nonrevocation of the instrument by the testator. The appellant relies upon the evidentiary presumption that a testator has revoked his will when a will left in his possession is not found in his possession at his death.
 SUB-ISSUE A
Does the evidentiary presumption of revocation which arises when a will which had been left in the testator's possession cannot be found after his death, apply in the instant case?
The fact that the will left in the testator's possession cannot be found after his death creates a presumption that the will was destroyed by the testator animo revocandi, or with intent to revoke. Barksdale v. Pendergrass, supra; Lovell v.Lovell, 272 Ala. 409, 132 So.2d 382 (1961); Vaughn v. Vaughn,217 Ala. 364, 116 So. 427 (1928). The presumption referred to is not an irrebuttable conclusion of law; it is a mere inference of fact. Managle v. Parker, 75 N.H. 139, 71 A. 637
(1908). See also: Note, "Wills-Revocation-Loss of a Duplicate Will" 56 Mich.L.R. 1036 (1958). Our cases clearly hold that this presumption of revocation or inference of fact is rebuttable and the burden of rebutting the presumption is on the proponent of the will. Barksdale v. Pendergrass, supra;Lovell v. Lovell, 272 Ala. 409, 132 So.2d 382 (1961); Brooks v.Everett, 271 Ala. 354, 124 So.2d 105 (1960).
The appellees attempt to distinguish Lovell v. Lovell, Brooksv. Everett, and Barksdale v. Pendergrass, on the basis that these cases involved copies of wills as distinguished from duplicate original wills executed simultaneously. The court had occasion to address appellees' contention almost one hundred years ago in the case of Snider v. Burks, 84 Ala. 53 at 58,4 So. 225 at 228 (1887):[1]
 The general rule is that where the will of a testator is proved to have been in the testator's possession, and can not afterwards be found, the prima facie presumption is that it was destroyed by the testator before his death animo revocandi. But this presumption may be rebutted by proper legal evidence. [Citation omitted.] But if the instrument is shown to have been out of his possession, the party asserting the fact of revocation "must show that it came again into his custody, or was actually destroyed by his direction." [Citation omitted.]
 Where the will is executed in duplicate, as in this case, a somewhat different rule obtains. If, in such case, the testator destroys one of the duplicates, and this is the only one in his possession, and intent *Page 796 
to revoke is to be presumed. . . .
[Italics omitted.]
We hold that where a duplicate original executed will is shown to have been in the possession of the testator and is not found at his death the presumption arises that he destroyed it for the purpose of revocation. See: 2 Bowe-Parker: Page on Wills, § 21.16 p. 371 (3rd ed. 1960), and cases cited therein.
 SUB-ISSUE B
Whether the presumption of revocation which arises when a duplicate original executed will left in the testator's possession is not found at his death, was overcome by evidence that the testator did not destroy his will with intent to revoke.
Careful search of the record reveals two pieces of evidence which suggest that the testator did not destroy his will animo revocandi. First, Eva Brown's answer to interrogatory number 10 of Ernest Stiles alleges that the contestant had access to the will and thus raises the inference that perhaps someone other than the testator destroyed the will:
 My father kept a metal locked box in his closet by his bed. The key to this box was in Ernest Stiles's possession from Tuesday until Saturday of the week my father died. When Ernest gave me the key to open the box in the presence of our family the will was not there. I have also looked through some old business records and papers but I did not find it.
We recognize that in Lovell v. Lovell, 272 Ala. 409,132 So.2d 382 (1961), this Court held that the mere fact that a will contestant had access to the will after the testator's death is not enough to overcome the presumption of revocation which arises when a will left in the testator's possession prior to his death is not found at his death.
There is, however, other evidence suggesting that the testator did not destroy his will with intent to revoke in the stipulation of facts:
 Mr. Tatum advised Mr. Stiles at that time [date of execution] and again on November 25, 1975 that if he, Mr. Stiles, desired to revoke his Last Will and Testament, he would have to destroy both the duplicate original in his own possession and the one Mr. Tatum had in his possession. At no time prior to his death did Mr. Stiles destroy or request that the signed duplicate original will in Mr. Tatum's possession be destroyed. At no time before Claude Stiles's death did said duplicate leave Mr. Tatum's possession nor did Mr. Stiles, nor anyone on his behalf request that it be returned to the possession of Claude L. Stiles.
The general policy behind the law of wills in Alabama is to give effect as nearly as possible to the testator's intentions as expressed in his will. City National Bank of Birmingham v.Andrews, 355 So.2d 341 (Ala. 1978); Taylor v. Harwell, 65 Ala. 1
(1880). It is common practice to execute duplicate wills for the purpose of enabling the probate court to determine a testator's intention when the duplicate left in the testator's possession cannot be found on his death. If the presumption of revocation, which arises when a duplicate will left with the testator is not found at his death, is given insurmountable effect, then the purpose for executing duplicate wills would be thwarted.
We hold that the evidence of Mr. Tatum's strict advice to Mr. Stiles that the duplicate in Tatum's possession, as well as the one in Mr. Stiles's possession, must be destroyed to effectively revoke the will, coupled with the fact that Mr. Stiles never attempted to destroy the duplicate retained by Tatum, together with the fact that the contestant had access to the will immediately after the testator's death, is sufficient to rebut the presumption of revocation. To decide otherwise would destroy the efficacy of executing duplicate original wills.
AFFIRMED.
FAULKNER, ALMON, EMBRY and BEATTY, JJ., concur.
[1] Snider, supra, the court held the presumption of revocation did not apply because in that case (unlike the instant case) the copy of the duplicate original executed will which had remained in the testator's possession was found in his possession at his death, and the other copy of the duplicate original will, which had been given to a third party, could not be found at the testator's death. It was on this distinction that the court based its decision not to apply the presumption of revocation in Snider. *Page 797