This is a will contest case.
James Robert Strait (Jimmy) died on May 11, 1995, survived by his wife, Ruby Elaine Strait (Candy), and two sons from a previous marriage, Daniel Isaac Strait (Dan), and James Randall Strait (Randy). On June 16, 1995, Dan Strait filed a petition in the Probate Court of Colbert County to probate his father's will. Candy Strait contested the will, alleging that her late husband had revoked it. The proceedings were transferred to the Colbert Circuit Court. Randy Strait, who was expressly excluded as a legatee under the will, intervened as a plaintiff in the will contest. Candy Strait later amended her complaint by adding a count requesting a judgment declaring that an antenuptial agreement she had entered into with Jimmy was void and unenforceable.
Dan, the proponent, filed a motion for a summary judgment, supporting his motion with his affidavit; the affidavit of Lindsey Mussleman Davis, the attorney who drafted the will; excerpts of the depositions of Candy Strait and Randy Strait; and copies of the will and the antenuptial contract. Candy *Page 1232 
Strait moved for a partial summary judgment on her complaint requesting a declaratory judgment regarding the antenuptial contract; her motion was accompanied by exhibits disclosing the assets that had been owned by her late husband. Candy Strait and Randy Strait opposed Dan's motion for summary judgment, supporting their opposition with Dan's deposition and Candy's affidavit. The trial court granted Dan's motion for summary judgment and further held that the antenuptial agreement was valid and enforceable. The plaintiffs appealed to the Supreme Court, which transferred the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
The record indicates that in July 1993 Candy Strait and Jimmy Strait married each other for the third time. The day before their wedding, they executed an antenuptial contract in which they each agreed to keep their property separate and to make no claim against the estate of the other. Candy Strait testified in her deposition that she had understood that they were executing the agreement only to avoid having to go back to court in case they divorced again and that the agreement would be changed shortly after the marriage.
In August 1994, Jimmy consulted his attorney, Davis, regarding the drafting of a will. He met with Davis a few more times to discuss the formulation of his estate plan, and she drafted the will according to his instructions. On September 19, Jimmy met with Davis to review the will and returned to her office the next day, accompanied by Dan, and executed the will. Candy stated in her affidavit that Jimmy told her that the will was only a temporary one and that he would change it. The parties agree that Randy and Jimmy had been estranged since about 1991. However, Randy testified in his deposition that approximately two months before Jimmy's death, he asked Jimmy about the will and that Jimmy stated that he intended to leave his estate to his family, including all of his grandchildren.
On May 5, 1995, Davis received a telephone call from Candy who stated that Jimmy wished to see her regarding making some changes to his will. Davis went to Jimmy's home, where Candy told Davis, in Jimmy's presence, that Jimmy wanted to change his will to provide for her and "the children." Davis asked to speak to Jimmy privately. She stated that when they were alone, Jimmy told her "the way the will [is], [is] how I want it to be." Jimmy died six days later. Candy stated that, after Jimmy died, she attempted to locate the will by looking in the coat pocket where, she said, she had last seen the will, but did not find it. Candy stated that she made no further effort to find the will. The original will that Jimmy kept in his possession was not found, and Dan Strait offered for probate a copy of the will that had been kept at Davis's office.
A summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P.; Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988). The party moving for a summary judgment must present, in support of the motion, evidence that would be admissible at trial. Rule 56(e), Ala. R. Civ. P. When the moving party makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to rebut the showing by presenting substantial evidence creating a genuine issue of material fact.Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989). Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870 (Ala. 1989). On review of the trial court's judgment, we are required to view the record in a light most favorable to the nonmovant and to resolve all reasonable doubts in favor of the nonmovant. Hanners v. Balfour Guthrie,Inc., 564 So.2d 412, 413 (Ala. 1990).
The plaintiffs contend that the trial court erred in entering a summary judgment for Dan because, they claim, genuine issues of material facts exist regarding whether Jimmy revoked his will. The plaintiffs contend that the facts of this case invoke a presumption that the decedent had revoked his will and that the presumption should have *Page 1233 
precluded the entry of a summary judgment on their claim.
 "When the will is shown to have been in the possession of the testator, and is not found at his death, the presumption arises that he destroyed it for the purpose of revocation, but the presumption may be rebutted; and the burden of rebutting is on the proponent."
Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d 267 (1975). Furthermore, when the decedent has destroyed a copy of the will in his possession, a presumption arises that he has revoked his will and all duplicates, even though a duplicate exists outside the decedent's possession. Harrison v. Bird, 621 So.2d 972
(Ala. 1993); Stiles v. Brown, 380 So.2d 792 (Ala. 1980). The mere fact that a will contestant had access to the will after the testator's death is not enough to overcome that presumption. Summerhill v. Craft, 425 So.2d 1055 (Ala. 1982). We note that the general policy behind the law of wills in Alabama is to give effect as nearly as possible to the testator's intentions expressed in the will. Stiles v. Brown, 380 So.2d at 796. The Court in Stiles further stated that "[i]f the presumption of revocation, which arises when a duplicate will left with the testator is not found at his death, is given insurmountable effect, then the purpose for executing duplicate wills would be thwarted." Id.
The facts of this case establish a presumption that Jimmy destroyed his will with the intent to revoke it; therefore, the burden shifted to Dan to present sufficient evidence to rebut that presumption. There is ample evidence indicating that Jimmy did not destroy his will with an intent to revoke it. Candy testified that, aside from the fact that the will has not been found, she had no evidence that Jimmy had destroyed the will. It is worth noting, while it is not dispositive, that one of the contestants could have had access to the original will. Furthermore, Davis's testimony regarding her meeting with Jimmy six days before his death signifies his intention to die testate and to adhere to his previously established estate plan. Additionally, the provisions of his will are consistent with his overall estate plan and his apparent wish to keep his property separate from his wife's, a wish that is further evidenced by the execution of the antenuptial agreement.
However, where a proponent's evidence is contradicted by evidence presented by the contestants, we cannot find as a matter of law that the proponent has overcome the presumption of revocation raised by the failure to find the testator's copy of the will. Kelly v. Donaldson, 456 So.2d 30, 33 (Ala. 1984). The contestants' testimony regarding the decedent's statements to them in which they assert that he indicated an intention either to change his will or to distribute his estate in a manner inconsistent with the disposition set out under his will create an issue of fact regarding the possible revocation of his will. This conflicting evidence creates a genuine issue of material fact, thus making a summary judgment on this issue improper. Therefore, the summary judgment is due to be reversed as to the will contest issue.
Candy further contends that the trial court erroneously held that the antenuptial contract was valid. She supports her argument by pointing to her testimony that she signed the agreement without legal advice and without full knowledge of the value of Jimmy's estate; she argues that, based on that evidence, the agreement must be found to be unfair and, therefore, invalid. Antenuptial agreements are recognized in Alabama; however, courts are to scrutinize such agreements to determine whether they are just and reasonable. Mixon v. Mixon,550 So.2d 999 (Ala.Civ.App. 1989). For an antenuptial agreement to be enforceable, the party seeking to enforce it has the burden of showing that the consideration for the agreement was adequate and fair, just, and equitable from the other party's point of view or that the agreement was freely and voluntarily entered into by the other party with competent, independent advice and full knowledge of his or her interest in the estate and its approximate value. Id. at 1000; Woolwine v.Woolwine, 519 So.2d 1347 (Ala.Civ.App. 1987). Under appropriate circumstances, marriage may be sufficient consideration for an antenuptial agreement, especially when other factors exist, such as the husband's relinquishment of any rights he *Page 1234 
may have in the wife's estate. Barnhill v. Barnhill,386 So.2d 749 (Ala.Civ.App. 1980), cert. denied, 386 So.2d 749 (Ala. 1980).
In the present case, the marriage was clearly part of the consideration for executing the agreement. Candy Strait testified that she knew that there would be no marriage if she did not sign the agreement. Furthermore, the terms of the agreement provided not only that Candy relinquished her rights to Jimmy's estate, but also that he relinquished his rights to her estate, so that each one's property would go to his or her children from previous marriages. Therefore, there was ample consideration for the agreement.
Candy also argues that the agreement is void because, she says, she entered the agreement without independent legal advice or full knowledge of Jimmy's assets. However, the agreement states:
 "WHEREAS, wife prior to the execution of this agreement, has been advised of her right to confer with an attorney of her own selection, to review this agreement and has declined to do so. Said fact is evidenced by the waiver which she has voluntarily executed. The wife does acknowledge that she is fully acquainted with her husband's means and resources as they presently exist and that she has ascertained and weighed all the facts . . . and that all facts have been fully and satisfactorily explained to her."
When deposed, Candy stated that she was given the option to seek legal advice, but that she did not have time to do so. She further stated that, while she was aware of the property that Jimmy owned, she was not informed of its value. However, she stated that nothing prevented her from obtaining an appraisal of his property to ascertain the value. Furthermore, she testified that she had gone through a divorce from Jimmy in 1991 and that on that occasion they had had to go to court to divide some of the property that they owned. The agreement was accompanied by an exhibit listing Candy and Jimmy's property. The exhibit listed Jimmy's real property assets, many of which were rental properties, and the monthly income from the various properties. Candy asserts that she was unaware when she signed the agreement that Jimmy had cash on hand of $45,000; furniture, tools, and equipment worth $100,000; and that the value of the real estate was $1,175,000. She asserts that she did not have adequate knowledge because the exhibit did not list the value of the properties, and excluded the cash and the personal property values.
This court has held that when a spouse has at least a general knowledge of what he or she is relinquishing and a general knowledge of the extent of the other spouse's estate, an antenuptial agreement based on adequate consideration is fair, just, and equitable. Barnhill, supra, at 752; Woolwine, supra, at 1350. The evidence indicates that Candy was familiar with Jimmy's assets, and that, although she may have not known of all his assets, she clearly had a "general knowledge" of the rights she was relinquishing. Therefore, the trial court properly held that there was no genuine issue of material fact regarding Candy's claim that the antenuptial agreement was invalid. As to that claim, the summary judgment is due to be affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., concurs.
THIGPEN, J., concurs in the result.