[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 963 
This case involves the estate of Flora W. Owen, deceased, and whether she left a last will disposing of her estate. Flora died on March 7, 1998. David McGriff, a distant relative and a longtime caretaker for Flora, obtained letters of administration from the DeKalb County Probate Court on March 11, 1998. Although McGriff searched for Flora's will, no will was ever found. McGriff received letters of administration from the probate court on March 30, 1998.
On September 25, 1998, Gene H. Owen, one of Flora's stepsons, filed a petition seeking to probate Flora's "lost will," alleging that Flora had died testate, but that her will had been lost. The petition also alleged that he and Paul W. Owen and John W. Owen, Flora's other stepsons, were named beneficiaries in the lost will. The petition to probate the lost will was consolidated with McGriff's administration, and the case was removed to circuit court on January 25, 1999. Paul W. Owen and John W. Owen were subsequently added as parties.
On April 12, 1999, McGriff filed a motion for a summary judgment on Owen's petition to probate Flora's lost will. The summary-judgment motion alleged that Owen had failed to prove any of the elements necessary to establish his claim that there was a lost will. The trial court denied the motion for a summary judgment on May 4, 1999, and a trial on the merits began on May 18, 1999. The trial was not concluded that day, but it was resumed; it concluded on September 15, 1999.
On April 17, 2000, the trial court entered its judgment admitting Flora's lost will for probate. In pertinent part, that judgment provided:
 "The decedent Flora W. Owen, died March 7, 1998, and letters of administration ad colligendum were issued by the Probate Court on March 11, 1998, to David McGriff for the purpose of discovering the assets and original last will and testament of the decedent. When David McGriff failed to produce a will, Gene H. Owen filed a petition in the Probate Court on September 28, 1998, to admit to probate the lost will of the decedent. Gene H. Owen's brothers, John and Paul Owen, later joined in this petition. On January 19, 1999, David McGriff filed a petition for removal of the estate to Circuit Court, and an order of removal was entered January 26, 1999.
 "The petition to probate the lost will of the decedent has been the subject of lengthy hearings before the court on May 18, 1999, and September 15, 1999, and is now submitted upon the evidence and briefs of counsel, the final brief having been filed on March 6, 2000.
 "The decedent and O.E. `Jim' Owen were married in June 1972, and lived together for ten years before Mr. Owen's death in 1982. Both had been previously married and widowed. Although the decedent had no children, Jim Owen had three sons, Gene, Paul, and John. The decedent had no immediate relatives, but was survived by cousins who are her heirs at law. David McGriff, the administrator ad colligendum, is a relative who assisted Mrs. Owen with affairs during the last years of her life, but he is not an heir.
 "There is evidence that the estate of Flora Owen has assets of approximately *Page 964 
one million dollars. Much of the estate's value is represented by shares of stock which O.E. Owen either owned at the time he and Mrs. Owen married or that he acquired during the marriage. Some of the stock had been placed in their joint names before O.E. Owen's death and some was bequeathed to Mrs. Owen at his death. The value of the stock was substantial at the time of O.E. Owen's death and has increased since then due to favorable stock market conditions.
 "Mr. and Mrs. Owen, in January, 1980, obtained the services of L. Clyde Traylor, then a practicing attorney, now a judge, to prepare wills for them. Judge Traylor testified that he prepared wills for them that were identical and reciprocal with one exception: Mr. Owen bequeathed his one-third interest in a hardware store to his children. With this exception, each testator bequeathed his or her entire estate to the surviving spouse and each named the sons of Mr. Owen as contingent devisees, who would equally divide the entire estate of the surviving testator. Each will named the spouse as executor and John Owen as alternate executor.
 "Judge Traylor further testified that the wills were executed on the same date, and that the persons who witnessed the will of O.E. Owen, including himself, also witnessed the will of Mrs. Owen.
 "Mr. Owen's will was probated following his death and has been offered as an exhibit in this case, but Mrs. Owen's will has not been produced and it is this reciprocal will that the petition seeks to have the court accept for probate as the lost will of the decedent.
 "The applicable law is stated in Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d 267 (Ala. 1975), which holds that an applicant who seeks to probate a lost will has the burden to prove four elements: 1) the existence of a will — an instrument in writing attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator; 2) the loss or destruction of the instrument; 3) the non-revocation of the instrument by the testator; and 4) the contents of the will in substance and effect. The evidence is substantial and the parties agree that Mrs. Owen made a will and that the will has been lost or destroyed. The court finds accordingly and further finds that the will was reciprocal in its content to that executed by Mr. Owen. The remaining issue, the one that forms the crux of the dispute between the parties, is whether the proponent has proved non-revocation of the will by Mrs. Owen.
 "The law provides that when a will is shown to have been in the possession of a testator and is not found at the testator's death, the presumption arises that the testator destroyed the will for the purpose of revocation; this presumption, however, is rebuttable, but the burden of rebutting is on the proponent. Barksdale v. Pendergrass, supra. The evidence in this case is in dispute on that issue, but upon a consideration of all the evidence, the court finds that the will was not revoked. The following is a portion of the evidence upon which the court bases it finding:
 "1. After the death of her husband, Mrs. Owen consulted on numerous occasions with Attorney Traylor, who was her friend and confidant as well as her attorney, seeking advice regarding her assets and other financial matters. On one occasion she inquired about changing her will to add a bequest to her first husband's cousin and his wife, George and Ruth Morris. Attorney Traylor advised her against the proposed change because of the reciprocal nature of the *Page 965 
wills made by her and Mr. Owen, and the possibility that they could be construed as constituting a contract as to the disposition of their residual estates, and that a change could result in litigation. He further advised that she was free to dispose of her property as she saw fit during her lifetime and that the restriction applied only to testamentary gifts. Mrs. Owen accepted this advice and provided for the Morrises outside the will. The only other change to her will that Mrs. Owen and Attorney Traylor discussed, and this was an issue raised by Attorney Traylor, was the possibility of replacing John Owen as executor because he lived out of state. It is unclear whether this change was ever made but there is evidence that Attorney Traylor was named executor by a codicil. In spite of many conversations with Clyde Traylor, Mrs. Owen never indicated a desire to exclude the Owen sons from taking her estate or a desire to leave her estate to her heirs at law.
 "2. During the years subsequent to her husband's death, Mrs. Owen told numerous persons that she had a will. She mentioned it to her bridge club members; she mentioned it to David McGriff and told him that Clyde Traylor was her executor; she told John Owen that he and his brothers were included in her will. She told Ruth Morris less than four months prior to her death that she had a will, that it was in her safe-deposit box at the bank, and that Clyde Traylor was her executor. In August 1996, she informed Ed Stuckey, her personal investment officer at Compass Bank, that she had a will, and she told Di Miller, an employee of the bank whom she had known for many years, that she had `taken care of Jim's children.'
 "3. There was testimony from close friends of Mrs. Owen that she had a very close and loving relationship with the Owen sons, and that she considered their children as her grandchildren. One witness testified that Mrs. Owen referred to the Owen sons as `the children she never had.' Although the relationship between Mrs. Owen and the sons had not been completely free of disagreements over the years, the relationship appears to have been one of mutual concern and caring, which included visits, holiday cards and gifts, correspondence by letter, and telephone contact. Mrs. Owen's handwritten obituary listed the sons and their children among her survivors.
 "4. Jim Owen was a successful businessman and investor and held substantial assets at the time he and Mrs. Owen married; Mrs. Owen, on the other hand, had worked as a secretary prior to their marriage and brought few assets into the marriage, except for a 73-acre farm and a house in town which she had inherited from her father. Shortly before she and Mr. Owen executed reciprocal wills in January, 1980, Mrs. Owen conveyed the farm to David McGriff, taking a promissory note and mortgage, and later conveyed the house to him as a gift. In looking at the manner in which she disposed of this ancestral property and the manner in which her will disposed of assets initially accumulated by Mr. Owen, it appears that the origin of the property was relevant to the manner of disposition. In addition to the ancestral real estate that she conveyed to David McGriff, she also gave him her father's shotgun, fiddle, tools, rocking chair, and blanket chest. Her will, on the other hand, devised and bequeathed the property of the marriage to Mr. Owen's sons.
 "5. David McGriff held a power of attorney from Mrs. Owen which was executed *Page 966 
in 1993. By virtue of the power of attorney, he assumed control of Mrs. Owen's affairs in late January or early February 1998, while she was hospitalized immediately before her death. Mr. McGriff had access to Mrs. Owen's residence and a file cabinet located therein where she kept many of her important papers, and he acknowledges that he searched through these papers looking for a will prior to Mrs. Owen's death. Mr. McGriff also had access to Mrs. Owen's safe-deposit boxes at the bank, by virtue of the power of attorney and also the fact that the `signature card' at the bank authorized him to enter the boxes. He denies ever entering the boxes except with his attorney after being appointed administrator and insists that no will was found in the box or in her residence.
 "6. Mrs. Owen was very attentive to her affairs and had a history of managing them well. It seems unlikely that she would have destroyed her will for the purpose of revoking it without simultaneously replacing it with a new will.
 "There is other evidence not enumerated above which also is supportive of the court's finding that the will was not revoked. Probably none of the evidence taken alone is sufficient to overcome the presumption of revocation, but considered in its entirety the evidence points convincingly to that conclusion. Also, there is one uncontroverted fact in the evidence that is especially significant, and that is the extent to which Mrs. Owen relied over the years upon the advice of her trusted friend and attorney, Clyde Traylor, and it was his advice to her that because of the execution of the reciprocal wills she was not free to exclude the Owen sons from her estate. For Mrs. Owen to revoke her will in total disregard of this advice would have been a dramatic departure from her practice for many years of relying upon Clyde Traylor's advice, and would have required her to breach the restrictions she understood the reciprocal wills imposed upon her. Such conduct seems totally out of character for Mrs. Owen based upon the picture of her painted by the evidence.
 "For the reasons stated, it is adjudged that the petition to admit to probate the lost will of Flora W. Owen is granted, such will providing that the entire estate of Flora W. Owen be bequeathed and devised to Paul Winford Owen, Gene Hood Owen, and John William Owen, share and share alike, per stirpes. David McGriff shall remain as administrator ad colligendum pending further action of the court."
McGriff filed a postjudgment motion on May 18, 2000, pursuant to Rule 59(e), Ala.R.Civ.P., to alter, amend, or vacate the judgment. On June 6, 2000, at the hearing on his postjudgment motion, McGriff also amended his Rule 59 motion to allow additional testimony for the purpose of showing that he could not have had access to the safe-deposit box that allegedly contained Flora Owen's will and to present evidence concerning the origin of the assets in the estate. On June 9, 2000, the trial court denied McGriff's Rule 59(e) motion, as amended, directed the probate court to admit Flora Owen's lost will to probate, and ordered that letters testamentary be issued to John Owen as executor of Flora Owen's estate. McGriff was ordered to settle his administration within 30 days. McGriff's later motion to stay the proceedings pending this appeal was granted upon his posting of a supersedeas bond on June 27, 2000, and he remains the administrator pending the outcome of this appeal. *Page 967 
McGriff appealed to the Supreme Court of Alabama; that court transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
McGriff presents four arguments: (1) that the trial court erred in denying his motion for a summary judgment; (2) that the trial court misapplied the law to the facts in the record, thereby reaching an erroneous judgment; (3) that the trial court erred in finding the existence of the lost will by reference to the will of Flora's deceased husband; and (4) that the trial court erred in refusing to hear additional testimony proffered pursuant to McGriff's Rule 59(e) motion.
In addition to the facts already set out in the trial court's judgment, all of which are supported by the record, the record reveals that Flora outlived her immediate relatives, and that McGriff is the son of one of Flora's cousins. Although McGriff is not an heir, he does have claims against the estate for approximately $80,000.
Traylor, the lawyer who prepared Flora's will, now serves as the district judge of DeKalb County. In addition to the testimony summarized by the trial court, Traylor testified that he never advised Flora that she could not change her will. Flora conveyed the house she had inherited from her father to McGriff in 1995, after Traylor advised her that she could dispose of property in her estate during her lifetime. The record also shows that Flora scrupulously followed Traylor's advice concerning gifts to her friends George and Ruth Morris by making intervivos gifts. Traylor also testified that Flora had never mentioned any intent to exclude her stepsons from inheriting the assets in her estate that had come from their father, O.E. "Jim" Owen.
The record also shows that Flora had prepared handwritten inventories of her safe-deposit box and that those inventories included "my will" among the box's contents. Although various witnesses described Flora as having been meticulous in her business affairs, she never gave any indication that she had revoked or destroyed her will. There was also considerable evidence not discussed by the trial court in its order indicating that Flora regarded her stepsons as the equivalent of her "children" or "grandchildren."
In addition to McGriff, Stella Pierce and Selma McElhaney offered testimony to the effect that Flora had stated that she had given her stepsons all that they were going to get. We note that the testimony of McGriff, Pierce, and McElhaney also indicated that Flora promised them proceeds from the estate if they could keep her out of a nursing home. Although some of this testimony concerning Flora's promises and intent could support an inference that Flora intended to revoke her will, there is no testimony that Flora ever directly expressed an intent to do so. Moreover, this testimony is also at odds with Flora's actions, such as her gifts to the Morrises. McElhaney also conceded on cross-examination that Flora had expressed the intent that her stepsons were to receive what she had received from their father.
During the last years of her life, Flora suffered from heart problems that eventually caused her death. She was hospitalized on January 6, 1998, and she remained in the hospital until she died on March 7, 1998. During that time, McGriff controlled Flora's affairs through the exercise of a power of attorney executed in 1993. When he assumed this control, he denied Flora's stepsons or their families access to Flora's home. Before Flora's death, McGriff went to AmSouth Bank, where Flora kept her safe-deposit boxes, and inquired about gaining access to the boxes. McGriff testified that bank employees told him that his power of attorney would not *Page 968 
allow him access to the safe-deposit boxes. Bank employees, however, also testified that the bank's policy was to permit access to safe-deposit boxes to one who had a power of attorney executed by the boxholder. Although McGriff's name is on the signature card for the safe-deposit box in which Flora allegedly kept her will, there is no indication on the bank's access cards that McGriff accessed the box before Flora's death. McGriff gave deposition testimony that indicated that he had obtained access to Flora's safe-deposit box before her death, but he later testified that he had not accessed the box until after Flora died. McGriff also presented evidence attempting to show that he could not have gained access to the box before Flora's death by only the authority of his signature on the signature card. However, bank employees testified that the signature card and Flora's power of attorney issued to McGriff would have provided him with the authority under the bank's rules to access Flora's safe-deposit box before her death.
McGriff's first argument is that the trial court erred in denying the summary-judgment motion, because, he says, the petition to probate Flora's lost will could not be supported by substantial evidence. Our standard of review of a trial court's ruling on a summary-judgment motion is settled:
 "A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), [Ala.]R.Civ.P. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n, Inc., 671 So.2d 674, 675
(Ala.Civ.App. 1995) (citations omitted), cert. denied, 517 U.S. 1121
(1996). Moreover, in determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130,1132 (Ala. 1993). No presumption of correctness attaches to a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. ofEduc., 631 So.2d 1023, 1025 (Ala.Civ.App. 1993) (citing Gossett v. TwinCounty Cable T.V., Inc., 594 So.2d 635 (Ala. 1992)).
Thus, viewing the evidence in a light most favorable to the Owens (Long, supra), we must consider whether the Owens presented substantial evidence to create a genuine issue of fact as to each element necessary to support the probate of a lost will that was brought into dispute by McGriff's summary-judgment motion. We first note that the trial court's reliance on Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d 267
(1975), for the elements was correct. Those elements have been more recently restated by our Supreme Court:
 "`In a proceeding to probate an alleged lost or destroyed will, the burden is on the proponent to establish, to the reasonable satisfaction of the judge or jury trying the facts:
 "`(1) The existence of a will — an instrument in writing, signed by the testator or some person in his presence, and by his direction, and attested by at least two witnesses, who must subscribe their *Page 969 
names thereto in the presence of the testator. [Citations omitted.]
 "`(2) The loss or destruction of the instrument. [Citations omitted.]
 "`(3) The nonrevocation of the instrument by the testator. [Citations omitted.]
 "`(4) The contents of the will in substance and effect. [Citations omitted.]'"
Harper v. Mason, 571 So.2d 295, 295 (Ala. 1990) (quoting Barksdale,supra, 294 Ala. at 529, 319 So.2d at 269-70). See also Tyson v. Tyson,521 So.2d 956 (Ala. 1988).
After a careful review of the record, we conclude that the facts set out in the trial court's judgment are fully supported,[1] and that those facts are supported by substantial evidence that Flora did have a will the contents of which were ascertainable by comparing her will with the will of her deceased husband. The record also contains substantial evidence to support the conclusion that Flora did not revoke or intend to revoke her will and that her will was lost or was removed from where she had placed it. Accordingly, we conclude that the trial court did not err in denying McGriff's motion for a summary judgment.
McGriff characterizes his second argument as whether the trial court misapplied the law to certain facts. This characterization is a plain attempt to avoid the application of the ore tenus rule. We note that because the trial court heard this case without a jury and because the evidence was in dispute, the ore tenus rule does apply.
 "[U]nder the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony."
Ex parte Pielach, 681 So.2d 154, 154-55 (Ala. 1996) (citations omitted).
Although McGriff argues strongly that his contentions are based on the trial court's application of the law, each of those contentions is based on assumptions McGriff makes about what the record shows and how those assumptions conflict with the trial court's findings of fact. In the first subheading in this part of his brief, McGriff makes essentially the same argument he made concerning the trial court's denial of his summary-judgment motion — that the trial court did not have sufficient evidence to support its judgment under Barksdale, supra. Because we have already concluded, in addressing McGriff's argument as to his summary-judgment motion, that the trial court had substantial evidence to support each element of a last will enumerated in Barksdale, this argument *Page 970 
is also without merit. Further, in examining the record in light of the ore tenus rule, we conclude that the trial court's judgment granting the petition to probate Flora's lost will is due to be affirmed. Pielach,supra.
McGriff's third argument is that the trial court erred in construing Flora's lost will by considering the evidence and testimony as to the will of Flora's deceased husband. McGriff argues that the Owens presented insufficient evidence of the contents of Flora's will. However, the record shows that Judge Traylor testified at some length concerning the contents of Flora's will and specified particular differences between that will and the will of her deceased husband. Moreover, a copy of Jim Owen's will was admitted into evidence. Under these circumstances, we conclude that the trial court had sufficient evidence from which to determine the contents of Flora's lost will.Barksdale, supra.
McGriff's final argument is that the trial court erred in denying his postjudgment motion to "open" the judgment and to take additional testimony from (1) Stella Pierce to the effect that Flora had stated that she wished to disinherit the Owens; (2) Bill McGriff, an accountant, concerning the value of Flora's estate; and (3) Steven Drexler, a purported expert in handwriting analysis, to show that the ink used by McGriff in signing the signature card for the bank safe-deposit box was "similar" to the ink he used for signing the access cards for the safe-deposit box. We note that trial courts have broad discretion in disposing of postjudgment motions under Rule 59, and an order based on the exercise of that discretion is presumed correct. Covington v.Covington, 675 So.2d 436 (Ala.Civ.App. 1996); Smith v. Smith, 656 So.2d 814
(Ala.Civ.App. 1994). Moreover, the broad discretion accorded a trial court in considering whether to reopen a case after a final judgment has been entered was settled law before the adoption of the Rules of Civil Procedure, see, e.g., Gilmer v. Salter, 285 Ala. 671, 235 So.2d 813
(1970), and remained settled after their adoption. Jasper CommunityHosp. v. Hyde, 397 So.2d 153 (Ala.Civ.App. 1981); Sutton v. Sutton,55 Ala. App. 254, 314 So.2d 707 (Ala.Civ.App. 1975).
The proffered testimony by Pierce was an amplification of her testimony that Flora's relationship with her stepsons had deteriorated and that Flora had planned to exclude them from her will. This testimony is, at most, cumulative of Pierce's testimony at trial. Similarly, Bill McGriff's testimony concerning the value of Flora's estate was duplicative of evidence presented at trial. With respect to the proffered additional testimony of Drexler, we note that the trial court had already received his affidavit to the effect that the inks used by McGriff on the safe-deposit box signature card and the ink used on access records were similar. Moreover, we note that Drexler's affidavit indicates that his opinion is based in part on McGriff's contention that he signed all of the cards concerning Flora's safe-deposit box on the same day.
In both Jasper and Sutton, supra, this court considered whether the trial courts had abused their discretion in refusing to open judgments to take additional testimony in light of a question as to whether those judgments were supported by the evidence. Under those cases, a trial court does not err in refusing to open a judgment to take additional testimony where the proffered evidence is merely cumulative of evidence at trial or goes to the weight of the evidence already before the court. As we have discussed, the trial court's judgment is supported by substantial evidence. The additional evidence proffered by McGriff in this case is at best *Page 971 
cumulative of evidence already before the trial court. We therefore conclude that the trial court did not abuse its discretion by refusing to open the judgment for the taking of additional testimony as requested in McGriff's Rule 59(e) motion. The judgment of the trial court is due to be affirmed.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] We note that in their briefs to this court, the parties accept the trial court's judgment as the evidentiary basis for the denial of McGriff's summary-judgment motion. Thus, we review the evidence as it existed at the time of the trial court's judgment rather than at the time the trial court denied the summary-judgment motion. Our Supreme Court has stated "that it would be a rare case where this Court would reverse the denial of a summary judgment when the nonmovant has produced sufficient evidence at trial to survive a directed verdict motion."Superskate, Inc. v. Nolen, 641 So.2d 231, 234 (Ala. 1994).